ALUMIWALL CORPORATION *v.* THE INDIANA EMPLOYMENT SECURITY BOARD ET AL.

[No. 19,282. Filed May 17, 1960.]

536

*Alan I. Klineman, Robert A. Rose, Sidney D. Eskenazi* and *Klineman & Rose,* of counsel, all of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General and *Keith Campbell,* Deputy Attorney General, for appellees.

RYAN, J.—Appellant, an Indiana corporation, was engaged in the roofing and siding business, which included the furnishing of siding materials to be affixed to the exterior of various buildings. Appellant's salesmen called upon various prospective customers, and upon the signing of a contract for siding between the appellant and the customer, the appellant then delivered the siding to the job site and contacted a person who was called an "applicator," whose only function was to apply the siding to the exterior of the building.

The applicators received their assignments of work by calling on the phone or by going in person to the office of the appellant. They received a gross amount according to the number of "squares," which is a ten foot square space, which they applied to the particular building. The applicators furnished their own trucks and all their own equipment. All expenses pertaining to the transportation and maintenance and upkeep of their equipment were paid by the applicators out of the gross amount they received. Also from this gross amount the applicators would hire whatever help they felt was needed on the particular job. The applicators would then tell the appellant how much these helpers were to be paid, the appellant would then pay such sum to the helpers and deduct this amount from the gross amount due the applicators. The appellant had no right to tell the applicators how many helpers, if any, to hire, nor what they should be paid, nor did the appellant retain the right to fire or hire such helpers. The applicators also had complete discretion as to the manner and means of performing their work, although if the appellant received a complaint from the customer as to the workmanlike manner of the application of the siding to

the building, upon inspection by the appellant and upon finding that such work was not being done in a good and workmanlike manner, the applicator could be taken off the job. Any defective work had to be corrected at the expense of the applicators. The appellant exercised no control over such applicators in regard to their working hours, to the number of jobs they took, or as to whether or not they did or did not work. In other words, if the applicator, upon the completion of a job, did not desire any other work he simply did not call the appellant and request further jobs.

The Liability Referee for the Indiana Employment Security Board found that the services of such applicators and their helpers constituted employment by the appellant, and thus appellant was subject to contributions for such employment under the Indiana Employment Security Act. This appeal followed, with the assignment of error being that the decision is contrary to law, which effectively challenges the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings.

The governing section of the Act is as follows:

"52-1532. 'Employment' defined.—'Employment,' subject to the other provisions of this section, means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, express or implied.

"(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and (B) such individual, in the performance of such services is engaged in an independently established trade, occupation, profession or busi-

ness; or is an agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort.

"(b) Such term shall include services performed for remuneration by an officer of a corporation in his official corporate capacity."

The sole question thus presented for decision is whether or not such applicators come within the purview of this section of the Act or are excluded by provisions (A) and (B) above. The statutory test to thus be applied to the factual situation is, first, whether such applicators are "free from control or direction over the performance of such service" *and,* secondly, whether such applicators are "engaged in an independently established trade, occupation, profession or business." The decision of the Liability Referee was based mainly upon the fact that such applicators were not "independent contractors," since such applicators could be removed from a job upon their failure to properly perform the same and thus the appellant retained control and direction over the applicators. However, the test as provided for in the statute does not necessarily include nor require the indicia of the independent contractor theory to govern.

This court in the cases of *News Publishing Co.* v. *Verweire* (1943), 113 Ind. App. 451, 49 N. E. 2d 161, and *State Emp. Security Board* v. *Motor Express* (1946), 117 Ind. App. 113, 69 N. E. 2d 603, has been called upon to construe factual situations under this particular provision of the Act. Neither case applies the independent contractor doctrine to this provision of the Act, but both, and properly we think, assert that the only test is whether they are free from direction and control and engaged in an independently established business, as the statute requires. The case

of *South Bend Fish Corp.* v. *Employ. Sec. Div.* (1945), 116 Ind. App. 348, 352, 353, 63 N. E. 2d 301, is distinguishable from the present factual situation, since in that case the persons engaged in the questioned employment:

"... employed no capital, owned no equipment, incurred no financial risk, and had no business or overhead expense, all of which are usual to the independent trader ... the men were required to observe the appellant's rules governing access to and removal of products. They were required to secure their requirements of the jobbed products from the appellant and to use appellant's forms. They were prohibited from selling competitive products. They were required to make certain reports, observe certain accounting practices, surrender cash and checks to the appellant, receive their compensation from the appellant weekly, and to operate in a territory not entirely free and unrestricted."

This court has already declared in *News Publishing Co.* v. *Verweire, supra,* at page 458 of 113 Ind. App., that the legislature in using the term "control or direction":

"... intended the meaning given to these words in Webster's New International Dictionary. 'Control' is there defined as: '(4) To exercise restraining or directory influence over; to dominate; regulate; hence to hold from action; to curb; subject; overpower.' 'Direction' is defined as: '(3) That which is imposed by directing; a guiding or authoritative instruction; prescription; order; command.'"

Under the facts above set forth the applicators were free to perform the services when and in such manner as they saw fit. They provided their own tools and equipment, and could, if they so desired, hire helpers and determine the wage scale of such helpers. The

only restriction was that they perform such services in a good and workmanlike manner. Such restriction is inherent in all services performed by one for another. To hold that such a restriction is the retention of direction and control over such service so as to exclude it from provision (A) is against good reasoning and common sense.

The statutory test as enacted by the legislature requires more than the mere power to have the applicators cease their performance of the service upon a showing that such service was not being performed in the manner in which it should be performed. There should be some control and direction over the manner, method and means in which the services are performed.

The second standard is whether or not such services were an independently established trade, occupation, profession or business. Again it would seem that such applicators were engaged in an independent business. They owned and supplied their own tools and equipment, hired and fired their own helpers, were free to work or not work as they saw fit, and could perform the same services for other than appellant if they so desired.

What has been stated above is also applicable to a certain Howard Eldridge, who did preparatory work on structures before the applicators applied the siding.

The decision of the Liability Referee is therefore reversed.

Myers, C. J., Ax and Cooper, JJ., concur.

NOTE.—Reported in 167 N. E. 2d 60.