SAFETY CAB, INC., RED CAB, INC. v. INDIANA EMPLOYMENT SECURITY BOARD, ET AL.

[No. 967A66. Filed November 26, 1968. No Petition for Rehearing filed.]

*John C. O'Connor, Ruckelshaus, Bobbitt & O'Connor* of counsel, of Indianapolis, for appellants.

*William E. Matheny, Deputy Attorney General, John J. Dillon,* Attorney General, for appellees.

COOPER, J.—This matter comes to us for a judicial review of a decision rendered by the Liability Referee of the Indiana Employment Security Board. The appellants initiated this action by filing with the Indiana Employment Security Board their individual protests to assessments and demands made upon them for payment of contributions as employers for the years 1961, through the third quarter of 1965, under the Employment Security Act. The appellants requested hearings on the protests and thereafter, by agreement of the parties, the hearings were consolidated and held on November 26, 1966, before John C. Castelli, Liability Referee.

The appellants contended two points in their protests: First, that the drivers were not employees of the taxicab owners, within the meaning of the applicable statutes, but that in fact they were independent contractors; and second, that the 1961 contributions claimed were barred by the statute of limitations.

The liability referee upon hearing the case, determined that each of the appellants was subject to make such contributions under the Act as assessed, and from this ruling the

appellants seek this review, asserting as error that such determination was contrary to law. The decision of the Liability Referee reads as follows:

### "DECISION OF THE LIABILITY REFEREE
Rendered on the 1st day of August, 1967

"A protest was timely received from each of the above named parties to the Board's Notice and Demand for Payment of assessments, including interest and penalty, for the years 1961, 1962, 1963, 1964, and the 1st, 2nd and 3rd Quarters of 1965 in the following amounts:

|  | Notice & Demand No. | Total |
|---|---|---|
| Safety Cab, Inc. | 22270 | $17,206.90 |
| Red Cab, Inc. | 22271 | 7,323.29 |

"Pursuant to notice to all interested parties, a hearing was set and evidence received at Indianapolis, Indiana on November 16, 1966, and by agreement of the parties thereat the above entitled matters were consolidated for the purpose of hearing such evidence and rendering a decision.

"The protesting employers entered an appearance by counsel, Mr. John C. O'Connor, Attorney at Law, 129 East Market Street, Indianapolis, Indiana. The Indiana Employment Security Division was represented by the Attorney General's office by Mr. William E. Matheny, Deputy Attorney General.

"The Section of the Indiana Employment Security Act involved in the instant case is 801 and subsection 801(a), which reads as follows:

'Sec. 801. "Employment," subject to the other provisions of this Section, means service, including service in inter-state commerce performed for remuneration or under any contract of hire, written or oral, express or implied.

'(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Board that (A) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and (B) such individual, in the performance of such services is engaged in an inde-

pendently established trade, occupation, profession or business; or is an agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort.'

"The question presented to the Liability Referee for decision in this matter is whether the lease drivers of the taxicabs owned by the protesting employers were in employment subject to contributions within the meaning of Section 801 and subsection 801(a) of the Indiana Employment Security Act during the periods in question.

"The Liability Referee finds as an ultimate fact that the individuals who performed services as lease drivers for the protesting employer cab companies performed services for remuneration and were in the employment of the protesting employers, pursuant to subsection 801(a) of the Indiana Act, and that the remuneration paid the taxicab drivers for such services was wages subject to contributions.

"The Liability Referee finds the following evidentiary facts:

"1. A duly authorized Auditor of the Indiana Employment Security Division investigated the business operation of the above employers and, based upon information derived from such investigation the Indiana Employment Security Board issued Notice and Demand for Payment Nos. 22270 and 22271 on November 16, 1965, notifying the employing units of the assessments for additional contributions, interest and penalty in the amounts of $17,206.90 and $7,323.29, respectively, for the years 1961, 1962, 1963, 1964 and the 1st, 2nd and 3rd quarters of 1965.

"2. On November 29, 1965, the employers herein entered protests to the assessments for contributions, interest and penalty, as reflected by Notice and Demand for Payment Nos. 22270 and 22271 issued on November 16, 1965.

"3. Each cab driver herein involved operates a taxicab pursuant to the following Lease Agreement entered into between the individual drivers and the protesting employers:

### "LEASE AGREEMENT

"This agreement made the day and date hereinafter named, between ————, hereinafter designated as

"Lessor" and the driver hereinafter designated as the "Lessee".

"WITNESSETH:

"That in consideration of the promise and agreement of the parties hereto and the sums of money hereinafter agreed to be paid:

"1. The Lessor agrees to lease to the Lessee a taxicab maintained in proper operating condition as shall be prescribed by the laws governing the operation of taxicabs in the city of Indianapolis during the hours of the day and the days of the week as shall be designated by the Lessor. And, the Lessee agrees to lease such taxicab from the Lessor during such period as above.

"II. The Lessor Agrees:

"1. That the maintenance of such taxicab, taxicab meter and other equipment as above mentioned, as to labor, parts and other materials shall be furnished at its own expense and shall include necessary washing, greasing and mechanical services and repairs, replacement of tires and servicing of same, all at its own discretion: except that cost of repairs of replacement brought about by Lessee's abuse or carelessness or unlawful operation of such taxicab or equipment thereon may be charged to and become the responsibility of the Lessee.

"2. To provide at its own expense all necessary license fees or taxes having to do with the ownership of such vehicle or other equipment or brought about from the operation of such taxicab, except that any personal licenses or taxes from whatever source derived shall be the sole responsibility of the Lessee.

"3. To furnish a parking area for such taxicab covered by this agreement together with all necessary gasoline and oil: all of which shall be furnished at its expense, but the Lessor shall not be responsible for any gasoline or oil or other material purchased by the Lessee from an outside source, except under emergency conditions, and then only in such amount which is necessary and according to Lessor's direction.

"4. To provide protection against bodily injury or death to persons other than the Lessee and damages to property of such other persons brought about by the Lessee's operation of such taxicab, such protection to be of such limits and such type as shall be prescribed by

the ordinances of the City of Indianapolis, governing the operation of taxicabs.

"5. Lessor shall maintain for and supply to each Lessee for his use in calculating his Federal and State tax liability, records of taxicab fares as recorded on the meter; lease rental, mileage and any other charges paid to or for the Lessor by the Lessee.

"6. Lessor shall furnish an acceptable form of workmen's compensation insurance.

"III. The Lessee on his part agrees:

"1. To operate such taxicab in accordance with all the laws of the City of Indianapolis governing the operation of taxicabs and motor vehicles and in accordance with all Indiana State laws and Federal laws governing such operations and to operate said taxicab in a safe manner and to conduct such operation in an orderly fashion.

"2. To abide by the policies set out by the Lessor for the maintenance of good public service and to do everything in his power to enchance (sic) good public relations.

"3. There shall be a deposit required of $15.00 to be utilized to reimburse the Lessor for any amount due the Lessor throught (sic) shortages, advancements, etc.

"4. The Net Rental Return to the Lessor shall be $—— per shift (12 hours constitutes a shift) in addition the Lessee shall pay the Lessor 5 cents per mile for all miles driven. A "Hold Bac" (Twenty-four hours) the net shall be $—— per day and 5 Cents per mile driven.

"5. Lessees who check in late, shall pay the Lessor for all the time in excess of fifteen (15) minutes the sum of $—— (—) cents per hour or fraction thereof shall be additional.

"6. Reduction of charges under any emergency conditions shall be at the sole decision and discretion of the Lessor.

"7. Lessee shall maintain accurate trip records complete as required by city ordinances and shall supply these records at the expiration of each rental period. The Lessee shall also be obligated to immediately report, upon its happening or occurence, any accident in which said leased taxicab is involved in which either or both possible personal injuries or property damage occurs.

"8. Further, when monies taken in by a Lessee in the operation of his leased taxicab largely consist of flat rate trips, such time and mileage rental charges may, at the option of the Lessor, be suspended by the Lessor and a rental charge equal to —— per cent (——%) of the total receipts for the shift may be charged in their stead, such change in Rental Rates to be solely at the option and decision of the Lessor, and such change in Rental Rates may be invoked by Lessor to cover all Lessees for a period of thirty-six (36) hours if the predominate revenue to be taken in by all Lessees is expected to be derived from such Flat Rate per trip charges.

"IV. It is mutually agreed:

"1. This contract may be terminated for cause at any time by either of the parties hereto. Failure by the Lessee to operate such taxicab during the full period of the lease, i.e., hours of the day designated and days of the week so designated, shall be cause for termination. Failure to abide by the laws of the City of Indianapolis, the State of Indiana and the Federal Government governing the operation of taxicabs and, or motor vehicles and failure on the part of the Lessee to abide by the policies for the maintenance of good public service relations heretofore mentioned shall also be cause for termination on this contract.

"2. Nothing herein contained shall give the Lessee any rights to the taxicab covered by this agreement other than those outlined herein and these rights enure to the Lessee only while he is in possession of such taxicab as herein outlined.

"3. Taxicab provided shall be from the Lessor's fleet and may be changed at option of Lessor at anytime.

"IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed this —— day of ——————, 196——.

(Name of Lessor)

By _____

_____
Witness

By _____

_____
Witness      Lessee

Referee's note: Paragraphs 6 and 8, Item III, contained in the foregoing Lease are not included in the Lease Agreement for Safety Cab, Inc.

"4. The protesting employers are engaged in the business of carrying passengers for hire and own vehicles which are licensed for use as taxicabs pursuant to the Ordinances of the City of Indianapolis regulating the operation of automobiles for hire.

"5. Each driver enters into a written Lease Agreement with the company which designates the company as 'Lessor' and the driver as 'Lessee.' Such agreement provides that the Lessor will rent a taxicab to the Lessee during the hours of the day and days of the week as designated by the Lessor. Such Lease Agreement is terminable for cause at any time by either of the parties thereto.

"6. The Red Cab Lessee on his part agrees that the net rental return to the Lessor shall be $9.00 per shift (12 hours constitutes a shift.) In addition the Lessee shall pay the Lessor five cents (5) per mile for all miles driven. For a 'Hold Cab' (24 Hours) the net shall be $16.25 per day and five cents (5) per mile driven.

"The Safety Cab Lessee on his part agrees that the net rental return to the Lessor shall be $6.50 per shift (12 hours constitutes a shift.) In addition the Lessee shall pay the Lessor five cents (5) per mile for all miles driven. For a split shift cab (12 hours constitutes a shift between 10:00 A.M. and 10:00 P.M.) the rate would be $8.50 per shift, plus five cents (5) per mile for all miles driven. A 'Hold Cab' would be $12.50 per day and five cents (5) per mile driven.

"7. Each taxicab, which is painted with the company's name and insignia, is equipped with a two-way radio and a fare recording meter.

"8. The companies herein advertise in the telephone directory and maintain an office to receive calls for passenger pickup and a radio transmitter to relay the calls to the drivers and any call requesting a particular driver is relayed to that driver.

"9. The driver calls the company Dispatcher after each passenger is delivered and reports his location. A driver may refuse to accept a call given him by the Dispatcher, but the company has the right not to renew his agreement if the driver fails to produce a sufficient volume of business.

"10. Pursuant to the City Ordinances, the drivers are required to furnish the company with meter and trip reports which show the origin and destination of each trip made

and the amount of the fare. The fare schedule is fixed by the City Taxicab Ordinances.

"11. The City provides taxicab stands and does not permit cruising.

"12. The company maintains a garage where it services and repairs the taxicabs (including the radios and meters), furnishes the gasoline, oil, grease and anti-freeze and pays for and carriers Public Liability Insurance.

"13. The protesting employers have a right to terminate the Lease Agreement if a driver disobeys any City Ordinance or is negligent in the performance of his duties.

"The question of the status of the taxicab driver and the owner of the cab is one which was decided in Indiana by the Appellate Court in its decision *Carlos R. Young, d/b/a ABC Cab Company v. The Indiana Employment Security Board,* 134 Ind. App. 263, 187 N. E. 2d 489. In that decision, which with one exception paralles [sic] the factual situation contained in the instant case, the court recited this language:

> 'The statutory test to be applied to this factual situation is whether or not the drivers were "free from control or direction over the performance of such service" and whether they were "engaged in an independently established trade, occupation, profession or business." In applying the direction or control test we have previously stated that the common meanings should be given to such words. *News Publishing Co. v. Verweire* (1943), 113 Ind. App. 451, 49 N. E. 2d 161; *Alumiwall Corp. v. Ind. Emp. Sec. Board* (1960) 130 Ind. App. 535, 167 N. E. 2d 60. While some of the facts taken alone or in combination with some of the others might not sustain the conclusion that appellants exercised the necessary direction or control over the drivers, taken as a whole it seems plain that they did. They were required to charge according to fare schedule which was given them by the appellants, to account to the appellants at the end of each day as to the day's receipts, to furnish appellants with a trip sheet, to operate the automobile in a manner most efficient to the taxi business, and it seems apparent that the appellants had some direction or control over the hours of work and also as to who would be employed and the appellants further retained some direction or control over the process of discharging or firing.
>
> ***'As to the provision in the lease itself that the drivers were independent contractors and not servants

of the appellants, the principle that such provision is "ineffective to overcome the legal inference drawn from the facts", *Radley v. Commonwealth* (1944), 297 Ky. 830, 181 S. W. 417, is applicable here."

"The test for determining employment under the statute is conjunctive and both conditions specified in the law must exist. It appears, based upon the stated facts in the instant case, that the cab companies herein exercise, or have the right to exercise, such direction and control over the taxicab drivers in the performance of their services as is necessary to establish the relationship of employer and employee under the usual common law rules. The company is the one who is authorized and licensed under the ordinances of the City to operate a taxicab business and it necessarily retains the right to direct and control the drivers in the performance of their services in order to protect its investment and to insure the receipt of adequate income in return for its financial risk.

"The only distinguishing fact in the subject case from the Young case, *supra,* is that the 'lease drivers' herein agree by the 'Agreement' to rent a taxicab and agree to pay the Lessor a flat $9.00 and $6.50, respectively, per shift and pay in addition five cents per mile for all miles driven. The protesting employers herein argue that because of the said arrangement the subject 'lease drivers' do not receive remuneration for employment or have a contract of hire with them, but instead receive remuneration direct from the riding public. Although argument of counsel for the employers, indicating that remuneration received by the driver was not wages, is persuasive, we feel that once an employer-employee relationship has been established by retaining direction and control, the method or manner of making remuneration for services performed is not a determining factor in establishing tax liability. We must agree with the language stated in *U. S. v. T. S. City Transportation Co. of Tyler,* 293 F. 2d 953 (1961) :

'Wages' means remuneration for employment. 26 U. S. C. A. (IRC 1939) § 1426(a). There being an employer-employee relationship, as the district court correctly determined, and the taxicab business being the business of the employer, it follows that the collections of fares made by the employees for the employer are of funds of the employer and received for the employer's account. If the remuneration accrues from a service rendered by the employee in the employment, that remuneration does not fall outside the category of wages mere-

ly because the employee's remuneration is based upon a commission and is withheld in the employee's accounting with his employer for collections made. There is no analogy between the remuneration here involved and tips and gratuities.

'That some employees may have erroneously made tax payments as self-employed individuals should be no deterrent to requiring the payment of a proper tax from those who owe it.'

"This position is also supported by the courts in Iowa in *Kaus, d/b/a United Cab Co. v. Unemployment Compensation Commission*, 299 N. W. 415, 230 Iowa 860. The Kaus case has held that earnings of taxicab drivers over and above a $3.00 payment required to be made to the company, and the cost of gasoline, constitutes remuneration or wages for their services and it is not necessary they be paid directly by the company.

"After carefully considering the evidence and carefully examining legal authority, the Referee must conclude that the drivers herein are in employment subject to contribution within the meaning of Section 801 and subsection 801 (a) of the Indiana Employment Security Act. It is further concluded the drivers are not free from direction and control over the performance of their services.

"DECISION: IT IS, THEREFORE, CONSIDERED, ORDERED AND DECIDED, that the determinations of the Indiana Employment Security Board in the matter of assessments for delinquent contributions, interest and penalties, as hereinbefore set out, against Safety Cab, Inc., Account No. 29288, and Red Cab, Inc., Account No. 3489, 2020 North Illinois Street, Indianapolis, Indiana, as set forth in the Board's Notice and Demand for Payment Nos. 22270 and 22271, respectively, as served by the Board, are hereby affirmed.

s/ John C. Castelli

JOHN C. CASTELLI, LIABILITY
REFEREE"

The primary question presented to us by the record in this review for determination is, are the driver-lessees of the appellants, employees within the definition contained in the Employment Security Act?

The pertinent portion of the statutes defining the word "employer" reads as follows:

> Burns' Anno. Stat. Sec. 52-1530; "Employing Unit means any individual or type of organization . . . which . . . has had one or more individuals performing services . . . for remuneration or under any contract of hire . . ."

> Burns' Anno. Stat. Sec. 52-1531: "Employer means any employing unit which . . . has or had in employment, and/or has incurred liability for wages payable to four or more individuals . . ."

It is apparent from the decision rendered by the Liability Referee that he based his decision on the case of *Young, d/b/a ABC Cab Company, et al., v. Indiana Employment Security Board, et al.* (1962), 134 Ind. App. 263, 187 N. E. 2d 489, which was based upon an entirely different factual situation, which we will hereinafter point out. However, we do note, and agree with the general statement set forth in said opinion as follows:

> "The question of the status of the taxicab driver to the owner of the cabs is a question upon which the decisions of our courts do not appear to be in complete harmony. Apparently this is because the particular result in each instance is usually governed by a varying combination of facts and each case seems to be decided on its own set of circumstances. There is thus no hard and fast rule which can be laid down governing the question. The only distinction to be made is that which is pointed out in the Annotation at 10 A. L. R. 2d 369, where the cases on this question are collected, as to the cases decided under the Social Security Act where Congress had adopted the common law concept of the word 'employee'."

In the *Young* case, the operators, or taxicab drivers, paid sixty per cent of their receipts from the operation of the taxicabs to the cab company, charged the fare schedule fixed by the cab company, and "further retained some sense of control through a loose system of seniority, although such system in turn was limited by the fact that only three of the cabs were in operation at one particular time."

In the case now before us, the factual situation is entirely different. Only about twenty five per cent of the cab drivers are recognized employees of the appellants. These drivers receive only commissions for compensation with social security tax, federal and state income tax withheld by the appellants, and the appellants retain full control over those drivers' duties during their working hours.

The other seventy five percent of the drivers with whom we are presently concerned, lease the taxicabs they operate, pay a flat rental or lease fee, plus 5 cents per mile driven, and maintain their own hours and mode of operation as provided in the foregoing lease contract. They are not granted advances, or guaranteed minimum profit and they are not eligible to earn bonuses or any other fringe benefits given to commissioned drivers and other employees. These drivers must always have a deposit with the company equal to one day's rental of the cab.

On the other hand, employees of the companies (commissioned drivers) are, on occasion allowed advances against anticipated commissions, are eligible to earn bonuses based on bookings, number of days worked, promptness and other considerations, and are not required to make a deposit with the company. All drivers are required to conform with the applicable municipal ordinances regarding the operation, fees and rates in the operation of their respective cabs.

Under the foregoing statutes and the factual situations appearing in the record, we are of the opinion that appellants herein are not employers within the meaning of the statute and that the lessee-drivers are not employees, but are in fact, independent contractors.

It is a well-established general rule that persons occupying the status of independent contractors are not included within the meaning of the terms "employee", "workman" or others of similar import, as used in compensation or employment security acts, in the absence of any provisions requiring such

an inclusion. See *Prest-O-Lite Company v. Skeel* (1914), 182 Ind. 593, 596, 106 N. E. 365.

In the case of *Nash et al. v. Meguschar, et al.* (1949), 228 Ind. 216, 220, 91 N. E. 2d 361, we find the following statement:

"Our courts have been unable accurately to define the term 'independent contractor' to govern in all cases. As a result, there are many definitions and frequently a new set of facts brings forth a variation from all existing definitions. A fairly accurate definition of that term as applied to the facts in the instant case is contained in 27 Am. Jur. *Independent Contractors* § 2, p. 481, thus:

'Perhaps one of the most frequently quoted is to the effect that an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work.'

"See also *Prest-O-Lite Co. v. Skeel* (1914), 182 Ind. 593, 596, 106 N. E. 365. In that case at page 597, this Court said:

'When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer, does not render the person contracted with to do the work a servant' (authorities).

"As supporting these propositions see: *Standard Oil Co. v. Allen, Admr.* (1920), 189 Ind. 398, 404, 405, 126 N. E. 674; *Julius Keller Constr. Co. v. Herkless* (1915), 59 Ind. App. 472, 483, 109 N. E. 797; *McGee v. Stockton* (1916), 62 Ind. App. 555, 561, 113 N. E. 388; *Washburn-Crosby Co. v. Cook* (1918), 70 Ind. App. 463, 468, 120 N. E. 434; *Petzold v. McGregor* (1931), 92 Ind. App. 528, 531, 176 N. E. 640; *Gibbons v. Henke, et al.* (1940), 108 Ind. App. 481, 483, 29 N. E. 2d 995."

It is also interesting to note in passing, that it appears from the record that the Internal Revenue Service held that the appellants are not liable for contributions under the Federal Unemployment Act under the lessee-driver contract.

By reason of what we have hereinbefore stated, we are of the opinion that the determination made by the liability referee is contrary to law, and it is therefore reversed.

Carson, C.J., concurs, Faulconer, J., concurs in results.

Prime, J., not participating.

NOTE.—Reported in 242 N. E. 2d 25.