**TWIN STATES PUBLISHING CO.,
INC., Appellant–Defendant,**

v.

**The INDIANA UNEMPLOYMENT INSURANCE BOARD and The Indiana Department of Workforce Development,
Appellee–Plaintiff.**

No. 93A02–9605–EX–254.

Court of Appeals of Indiana.

March 17, 1997.

Transfer Denied Aug. 18, 1997.

D. Reed Scism, Blake J. Burgan, Barnes & Thornburg, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Phillip D. Hatfield, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Twin States Publishing Company, Inc., ("Twin States"), appeals the Liability Administrative Law Judge's ("LALJ") determination that individuals who deliver shopping guides for Twin States are employees within the meaning of Ind.Code 22–4–8–1(a). We reverse and remand.

### ISSUE

The sole issue presented for our review is whether the LALJ erred in concluding that individuals who deliver shopping guides for Twin States are employees within the meaning of Ind.Code 22–4–8–1(a).

### FACTS

Twin States is a "publishing company that prints [two] daily newspaper[s] and [two] weekly shopping guide[s] for county news."

(R. 17). The shopping guides, the *Fountain County Messenger* in Attica, and the *Indiana Spirit* in Kentland, contain advertisements which are paid for by the advertisers. There is no charge to the public for the guides. The guides are delivered by individual carriers who enter into written agreements with Twin States. The agreements, which state that the carriers are independent contractors, require the carriers to give two weeks notice before terminating their services, and to return all of Twin States' property at the time of termination.[1] If a carrier fails to provide notice or return property, Twin States may retain the carrier's final paycheck. Twin States has the authority to cancel the *Fountain County Messenger* agreement after receiving three customer complaints, and to cancel the *Indiana Spirit* agreement "for good and sufficient reasons." (R. 21).

Twin States assigns a shopping route to each carrier, and carriers may have more than one route. The shopping guides are delivered to the carriers' homes on Monday evening, and the carriers must deliver the guides to their customers by 5:00 p.m. Tuesday. Carriers are paid 5.5 cents per shopping guide delivery, and they are only required to leave the shopping guides in a dry place when they deliver them. Carriers may follow any pattern in delivering the shopping guides, and they may use any means of transportation. Carriers may deliver other publications as well as the shopping guide. If a carrier is unable to deliver the guides, the carrier is responsible for finding a replacement. Further, carriers may use helpers to deliver the guides. Twin States does not reimburse carriers for expenses.

An Indiana Department of Workforce Development auditor determined that the carriers were Twin States employees and, in January 1996, issued a "Notice and Demand" for unpaid unemployment contributions. (R.5). Twin States timely filed a protest, and an LALJ conducted a hearing on the dispute in February 1996. Thereafter, the LALJ found that the carriers were employees within the meaning of I.C. 22–4–8–1(a). It is from this determination that Twin States appeals.

## DECISION

■ Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedure, was based upon substantial evidence, was not arbitrary and capricious, and was not in violation of any constitutional, statutory, or legal principle. *Ashlin Transportation Services, Inc. v. Indiana Unemployment Insurance Board,* 637 N.E.2d 162, 165 (Ind.Ct.App. 1994). On judicial review, courts defer to an agency's fact finding, provided the findings are supported by substantial evidence. *Id.* However, a court owes no deference to an agency's conclusions of law. *Id.* When the facts are undisputed, and the question is whether those facts lead to a certain conclusion, the case presents a question of law and the courts need not defer to agency decision making. *Id.*

■ Here, because the facts are undisputed, we are not being asked to decide a question of fact. Rather, we are asked to apply a statutory provision to undisputed facts. Therefore, the question before us is a pure question of law, and the agency interpretation of the Act is not entitled to deference. *See, Ashlin,* 637 N.E.2d at 166.

I.C. 22–4–8–1 provides in pertinent part as follows:

"Employment" subject to the other provisions of this section, means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, expressed or implied.

(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this article irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the board that (A) such indi-

---

1. According to the written agreement, Twin States' property includes "carrier bag(s) and any remaining rubber bands." (R. 51).

vidual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract of service and in fact; (B) such service is performed outside the usual course of the business for which the service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed; or is a sales agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort.

According to Twin States, the carriers are not employees because 1) they are "completely free from direction and control," 2) "Twin States is not in the delivery business," and 3) the "delivery contractors are independent, and the delivery of periodicals is a recognized business." Twin States' Brief, p. 14. In support of its proposition, Twin States directs us to *Alumiwall Corp. v. Indiana Employment Security Bd.*, 130 Ind. App. 535, 167 N.E.2d 60 (1960).

In the *Alumiwall* case, Alumiwall was engaged in the roofing and siding business, which included furnishing siding materials to be affixed to the exterior of various buildings. After a customer had signed a contract, Alumiwall delivered the siding to the job site and contacted an "applicator" who applied the siding to the exterior of the customer's building. The applicators were paid at a rate set by Alumiwall for each ten square feet of siding applied. The applicators had complete discretion as to the manner and means of performing their work. For example, they provided their own tools and equipment, and could, if they so desired, hire helpers. The only restriction was that they perform such services in a workmanlike manner.

An Indiana Employment Security Board Liability Referee found that the applicators' services constituted employment, and that Alumiwall was subject to contributions for such employment under the Indiana Employment Security Act. Alumiwall appealed, and

argued that the Referee's decision was contrary to law. The statute in effect at that time provided as follows:

"Employment," subject to the other provisions of this section, means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, express or implied.

(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and (B) such individual, in the performance of such services is engaged in an independently established trade, occupation, profession or business; or is an agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort.

Burns' Ind.St. § 52–1532 (1960).

We thus determined that the sole question presented for our review was whether the applicators came within the purview of this section of the Act or were excluded by provisions (A) and (B). Specifically, the statutory test to be applied to the factual situation was 1) whether the applicators were free from control or direction over the performance of such service, and 2) whether the applicators were engaged in an independently established trade, occupation, profession or business.

We reviewed prior cases wherein we had been called upon to construe factual situations under this particular statutory provision, and we concluded as follows:

The statutory test as enacted by the legislature requires more than the mere power to have the applicators cease their performance of the service upon a showing that such service was not being performed in the manner in which it should be performed.[2] There should be some control

---

2. We had previously noted that the restriction that the applicators perform their services in a

good and workmanlike manner is "inherent in all services performed by one for another. To

over the manner, method and means in which the services are performed.

The second standard is whether or not such service were an independently established trade, occupation, profession or business. Again it would seem that such applicators were engaged in an independent business. They owned and supplied their own tools and equipment, hired and fired their own helpers, were free to work or not work as they saw fit, and could perform the same services for other than [Alumiwall] if they so desired.

*Id,* 167 N.E.2d at 62. We therefore reversed the decision of the Liability Referee.

■ Here, as in *Alumiwall,* the sole question presented for our review is whether the carriers come within the purview of this section of the Act or are excluded by provisions (A), (B) and (C).[3] Specifically, the statutory test to be applied to the factual situation is 1) whether the carriers are free from control and direction in connection with the performance of such service, 2) whether the carriers are engaged in an independent business, and 3) whether the service is performed outside Twin States' usual course of business.

■ The facts before us are analogous to those in *Alumiwall.* Here, the carriers are paid at a rate set by Twin States for each delivery made. They have complete discretion over the manner, method and means of performing their work. The only restrictions are that the carriers deliver the guides by 5:00 p.m. on Tuesdays, place the guides in a dry place, and perform their services in a workmanlike manner. Therefore, as in *Alumiwall,* Twin States has the power to terminate the carriers upon a showing that the deliveries are not being performed in the manner in which they should be performed. However, as we stated in *Alumiwall,* the statutory test requires more.

hold that such a restriction is the retention of direction and control over such service so as to exclude it from provision (A) is against good reasoning and common sense." *Id.* at 62.

**3.** We note that the legislature has amended the statute since the *Alumiwall* decision. First, conditions A and B in the prior version of the statute are essentially the same as conditions A and C in

Further, here, as in *Alumiwall,* we find that as a matter of law the carriers are engaged in an independently established business. Specifically, they provide their own transportation, choose their own hours of work within a 24 hour time frame, choose their own replacements or sub-carriers if they are unable to perform, choose and pay their own helpers, and may perform the same services for publishers other than Twin States if they so desire.

Lastly, Twin States is a publishing company, and the evidence clearly established that delivery of shopping guides is performed outside the usual course of Twin States' business. Based on the foregoing, the LALJ erred in concluding that the individuals who deliver shopping guides for Twin States are employees within the meaning of I.C. 22–4–8–1(a).

Reversed and remanded for further proceedings consistent with this opinion.

CHEZEM and SULLIVAN, JJ., concur.

the current version. *Furr v. Review Board of the Indiana Employment Security Division,* 482 N.E.2d 790, 793, n. 3 (Ind.Ct.App.1985). Further, the legislature added condition B which requires that such service performed be outside the usual course of the business entity for which the service is performed.