

**ATTORNEYS FOR APPELLANT**

Andrew B. Murphy
Faegre Baker Daniels LLP
Minneapolis, Minnesota

Angela N. Johnson
Faegre Baker Daniels LLP
South Bend, Indiana

Paul D. Borghesani
Law Office of Paul D. Borghesani
Elkhart, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Q. D.-A., Inc.,

*Appellant,*

v.

Indiana Department of
Workforce Development,

*Appellee.*

March 5, 2018

Court of Appeals Case No.
93A02-1703-EX-556

Appeal from the Indiana Department
of Workforce Development,
Unemployment Insurance Appeals.
The Honorable Suzanne E. Manning,
Liability Administrative Law Judge.
Case No. 93484

**Friedlander, Senior Judge**

[1]     Appellant Q. D.-A., Inc. ("Company") appeals from the determination of the

Liability Administrative Law Judge (LALJ) that Claimant was an employee of

Company rather than an independent contractor, such that Company was liable to the State for unemployment insurance taxes. We reverse.

[2] Company presents one issue for our review, which we restate as: whether the LALJ's conclusion that Claimant was an employee of Company under Indiana Code section 22-4-8-1 (2006) was unreasonable.

[3] Company acts as a middleman between qualified drivers and companies that manufacture recreational and other large vehicles. Specifically, Company pairs drivers with companies for the transport of these vehicles to dealerships and customers—known in the industry as "drive-away services." On January 9, 2013, Claimant entered into a contract with Company to provide drive-away services.

[4] Claimant subsequently filed for unemployment insurance benefits with the Indiana Department of Workforce Development (IDWD). On April 14, 2015, the IDWD issued a determination of wage investigation notifying Company that it had misclassified payments it made to Claimant. Company filed a protest to the IDWD's determination, and the LALJ held a hearing on Company's protest. Following the hearing, the LALJ concluded that the services provided by Claimant constitute employment such that Company owed to the State unemployment insurance taxes on payments made to Claimant. Company now appeals.

[5] The Indiana Unemployment Compensation Act provides that "[a]ny decision of the liability administrative law judge shall be conclusive and binding as to all

questions of fact." Ind. Code § 22-4-32-9(a) (1995). When the LALJ's decision is challenged as contrary to law, we are limited to a two-part inquiry into the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the finding of facts. Ind. Code § 22-4-32-12 (1990). Under this standard, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the LALJ's finding is a reasonable one. *Bloomington Area Arts Council v. Dep't of Workforce Dev.*, 821 N.E.2d 843 (Ind. Ct. App. 2005). Ultimate facts are conclusions or inferences from the basic facts. *Id.*

[6] Company argues the LALJ wrongly determined that Claimant was an employee of Company within the meaning of Indiana Code section 22-4-8-1. For purposes of determining when an employer is liable for unemployment taxes, employment is defined as "service . . . performed for remuneration or under any contract of hire, written or oral, expressed or implied." Ind. Code § 22-4-8-1(a). Further,

> [s]ervices performed by an individual for remuneration shall be deemed to be employment subject to this article irrespective of whether the common-law relationship of master and servant exists, unless and until all the following conditions are shown to the satisfaction of the department:
>
>> (1) The individual has been and will continue to be free from control and direction in connection with the performance of such service, both under the individual's contract of service and in fact.
>>
>> (2) The service is performed outside the usual course of the business for which the service is performed.

(3) The individual:

> (A) is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed; or

> (B) is a sales agent who receives remuneration solely upon a commission basis and who is the master of the individual's own time and effort.

Ind. Code § 22-4-8-1(b). Thus, pursuant to the terms of the statute, all workers are presumed to be employees until an employer demonstrates that all three factors are fulfilled.

## 1. Freedom from Control

To establish that an individual is not an employee, part (1) of the statutory test requires a putative employer to demonstrate that the individual has been and will continue to be free from control and direction in the performance of such service, both under the contract and in fact. *See* Ind. Code § 22-4-8-1(b)(1). To meet this requirement, an employer must show it lacks control and direction over the manner, method, and means in which the services are performed by the worker. *Circle Health Partners, Inc. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev.*, 47 N.E.3d 1239 (Ind. Ct. App. 2015).

Here, the LALJ found that Company "provides a two day orientation class to its independent contractors which includes 'the appropriate training for the position,'" "a DOT [Department of Transportation] physical, drug screen, information on Federal Motor Carrier Safety Act (FMCS) regulations, employer policies, and a driving test" and that Company "provides the FMCSR

pocketbook to its independent contractors." Appellant's App. Vol. 2, p. 9. The LALJ then concluded that although Claimant was free to choose his routes and to hire other drivers to perform the service, the orientation "is evidence that the claimant was not free from the employer's right to control." *Id.* at 11.

[9] On appeal, Company argues that the LALJ's determination is not supported by the evidence. Specifically, Company contends that the basis of the LALJ's conclusion—that the orientation provided by Company demonstrates employer control—is incorrect.

### a. Under the Contract

[10] Pursuant to the terms of the contract between the parties, Company does not employ any individuals to provide drive-away services; rather, it outsources this responsibility to third parties with the required experience, knowledge, skills, and license to operate commercial motor vehicles. Ex. Vol. 4, p. 14. Claimant is a self-employed individual operating as an independent contractor engaged in the business of providing drive-away services to various motor carriers and/or manufacturing companies on a trip-to-trip basis. *Id.* Furthermore, it was "expressly understood and agreed" that Claimant was an independent contractor for the services he provided to Company. *Id.* at 17, ¶ 1. Claimant was "in control of and free to determine the means and manner by which" he performed the drive-away services, and he was required to furnish the necessary tools, supplies, or materials to do so, including towbars, emergency equipment, and cell phones. *Id.* at 15, ¶ 2 and 16, ¶ 4 a. Although free to determine the manner in which he performed, Claimant agreed that he was performing

subject to and in compliance with the laws, rules and regulations of both state and federal agencies, including but not limited to the FMCSA and the DOT. *Id.* at 16, ¶ 3. In addition, the contract required Claimant to maintain a bond account with a minimum balance of $1,000. *Id.* at 17, ¶ 2.

[11] Also under the terms of the contract, Claimant was permitted to provide drive-away services for other companies. *Id.* at 15-16, ¶ 2 a. Moreover, Claimant had the right to hire qualified drivers to perform drive-away services for him, and, in such cases, he would be responsible for the direction and performance of the other drivers' activities. *Id.* at 15, ¶ 1. Further, Claimant assumed "full control and responsibility" for all hours scheduled and worked, wages, salaries, workers' compensation insurance, unemployment insurance, state and federal taxes, and fringe benefits for any drivers he hired to provide drive-away services. *Id.* at 17, ¶¶ 1, 1 a.

### b. In Fact

[12] Jennifer Miller, Company's Director of Administration, confirmed that Company does not employ any individuals with the license necessary to provide drive-away services but instead outsources this task to licensed third parties. Tr. Vol. 2, pp. 47-48. She testified that Claimant had complete discretion as to the route he took for deliveries and that no employee of Company oversees, supervises, or evaluates the work of the independent contractor drivers or rides with the independent contractors as they are performing their services. *Id.* at 51, 47.

[13]     Miller further stated that Claimant was responsible for the expense and requirements of obtaining/maintaining a commercial driver's license, lodging, fuel, tolls, meals, and return trip transportation. *Id.* at 80, 50. If Claimant towed his own vehicle for the return trip, he was required to provide all the proper hitch equipment, including the tow bar and light connectors, as well as insurance on the tow car, and the triangles and fire extinguisher required by the federal government. *Id.* Additionally, although Claimant indicated to the IDWD wage investigator that he did not have a bond account, Miller testified that in fact Claimant did have a bond account and that she was not aware of any independent contractor working with Company that did not have a bond account. *Id.* at 61. She explained that the bond account requirement remained in effect for the duration of Claimant's contract and that, if there were any claims for which Claimant were liable, he would be responsible for the first $1,000 of the claim. *Id.* at 60.

[14]     Compensation for drive-away services is negotiated on a per trip basis. *Id.* at 51. Miller explained:

> A:     We pay on a per mile basis. There [are] times where – depending upon where the – where the delivery is going, there's some routes that aren't as probably [sic] to drivers as desirable as other routes. Out East for example where there's toll roads, and he may ask for an additional five or ten cents a mile at that point before he would agree to take the – the trip.
>
> Q:     So that would be sort of a bartering or a negotiation back and forth –
>
> A:     - Yes. –

Q: - between [Company] and [Claimant] about the exact compensation?

A: Correct.

Q: And, if [Claimant] decided he didn't want to take a trip because he wasn't satisfied with the compensation, did he have the ability to do that?

A: Yes.

Q: And, do you know whether he in fact did that?

A: He has in fact.

Q: Are there any consequences for not taking a trip?

A: No.

*Id.* at 52.

[15] Miller also confirmed Claimant's right to provide drive-away services for Company's competitors and occasions where Claimant did so, even on the same day. *Id.* at 53-56. Miller further testified that, under his contract, Claimant had the right to hire individuals to perform drive-away services for him, and in that situation Company was neither involved in the hiring process nor did it have the authority to reject someone hired by Claimant. *Id.* at 49. Company also was not involved in how Claimant paid the drivers he hired. *Id.* at 51.

[16] Miller stated that Company has a DOT number and is a registered motor carrier with the DOT. *Id.* at 42. She testified that Claimant operated under Company's DOT number, which is very common in the drive-away industry. *Id.* at 43. In addition, she explained that the federal motor carrier regulations apply to the drive-away industry, including but not limited to hours of service

(i.e., the number of hours per day a driver is permitted to drive), drug testing, log books, and a DOT physical. *Id.* at 42-43, 44-45. These regulations are mandated by the federal government, and Company is not at liberty to ignore them. *Id.* at 44.

[17] Specifically with regard to the orientation, Miller testified that the purpose of the orientation is to review with the drivers the federal regulations promulgated by the FMCSA (Federal Motor Carrier Safety Administration), such as the hours of service and the required DOT physical. *Id.* at 45-46. In addition, the orientation session includes policies of Company, which are based upon the federal regulations. For instance, the FMCSA has established time frames in which certain accidents must be reported to the DOT, and Company incorporated these requirements into its company policies. *Id.* at 46. At orientation, Company provides the independent contractor drivers with the phone numbers to report accidents, as well as the phone numbers and hours for Company's dispatch offices. *Id.* Dawn Dennis, Dispatch Supervisor at Company, testified that contractor drivers received jobs either by calling in to Company's dispatcher or by receiving a call from the dispatcher. *Id.* at 85, 87. Miller further testified that the orientation does *not* include: instruction to drivers on how to perform their job, instruction on how to plan a route, instruction on how to operate efficiently, instruction on how to maximize profits, instruction on how to hire driver/employees, or information on how to obtain the necessary licenses. *Id.* at 46-47.

[18]   IDWD's sole witness, Investigator Marcia Wager, testified that she never inquired into what the orientation entailed, conceded she had no idea what Company's policies were, and that, with the exception of what was contained in Claimant's contract, she did not know specifically what Claimant was required to do. *Id.* at 29-30.

[19]   It is clear from the evidence that Claimant possessed rights that employees do not generally enjoy. He had the right to negotiate his compensation for each job he agreed to undertake, he had the right to decline work, he had complete control over the routes and performance of his jobs, he was free from supervision and evaluation by Company or any of its employees, he had the right to hire people to perform the jobs for him, and he had the right to simultaneously work for Company and its competitors. Moreover, the evidence demonstrates that Company's orientation and policies noted by the LALJ simply incorporate the requirements imposed upon it and the independent contractor drivers by the federal government. It is undisputed that Company is licensed as a motor carrier and that it, as well as anyone it hires to perform drive-away services, is required to follow the federal regulations.

[20]   We liken the facts in this case to those in *Twin States Publishing Co., Inc. v. Indiana Unemployment Insurance Board*, 678 N.E.2d 110 (Ind. Ct. App. 1997), *trans. denied*. There, a panel of this Court held that the LALJ erred in concluding that individuals who delivered newspapers and shopping guides published by Twin States were employees. The Court determined the delivery people were independent contractors because they were paid per delivery, and

they had complete discretion over the manner, method, and means of performing their work—even given the restrictions that they deliver the guides by 5:00 p.m. on Tuesdays, place the guides in a dry place, and perform the services in a workmanlike manner.

[21] Similarly, in *Alumiwall Corporation v. Indiana Employment Security Board*, 130 Ind. App. 535, 167 N.E.2d 60 (1960), this Court reversed the Liability Referee's determination that siding applicators were employees of the corporation that sold the roofing and siding materials. The applicators received work assignments by contacting the office of Alumiwall; they were paid according to the amount of siding they installed; and they furnished their own trucks and equipment. The applicators could also hire whatever help they deemed necessary with Alumiwall having no control over the number of helpers hired, the amount the helpers were paid, or whether helpers were retained or fired. In addition, the applicators had complete discretion as to the manner and means of performing their work, and Alumiwall had no control over the applicators' work hours, number of jobs they accepted, or whether they accepted any jobs at all.

[22] In *Circle Health Partners, Inc.*, a panel of this Court reached the opposite conclusion. 47 N.E.3d 1239. In that case, the Court affirmed the LALJ's determination that nurses and phlebotomists were employees of Circle Health. This decision was based on the fact that the nurses and phlebotomists who contracted with Circle Health were given eighteen specific steps to complete in conducting health screenings and collecting certain information. In addition,

the nurses and phlebotomists were paid an hourly rate for their hours worked, were entitled to reimbursement for travel and other expenses, and could not conduct the screenings at times other than the hours scheduled.

[23] With specific regard to the incorporation of and requisite compliance with the federal regulations, we find guidance from two cases in particular. In *Equal Employment Opportunity Commission v. North Knox School Corp.*, 154 F.3d 744 (7th Cir. 1998), the court held that school bus drivers were independent contractors and not employees. In looking at the control factor, the court discussed the state's extensive regulation of school bus drivers and stated that the imposition of the regulations was insufficient to show the drivers were employees because the regulations reflected control by the state, not control by the putative employer. Essentially, the employer's hands were tied by the state because it could not contract with a person who did not satisfy the state regulations.

[24] In *SIDA of Hawaii, Inc. v. National Labor Relations Board*, 512 F.2d 354 (9th Cir. 1975), the court reviewed the determination of the National Labor Relations Board that taxi drivers were employees instead of independent contractors. In doing so, the court recognized that the primary test was the extent of control exercised by the alleged employer and disagreed with the Board's conclusion that certain rules and regulations evidenced SIDA's control over the drivers. Rather, the court concluded, the rules and regulations were designed to enforce standards of conduct. Most relevant to the present case is the court's recognition that several of the regulations simply incorporated requirements imposed on SIDA by its commercial contracts and state and local ordinances.

Notably, the court affirmed the concept that "the fact that a putative employer incorporates into its regulations controls required by a government agency does not establish an employer-employee relationship." *Id.* at 359.

In light of this precedent and the totality of the facts and circumstances of the case before us, we determine Company's one-time orientation session does not demonstrate the kind of ongoing control over work methods needed to show control and direction under Indiana Code section 22-4-8-1(b)(1). Moreover, we do not find the incorporation of federal regulations into Company's policies to be inconsistent with an independent contractor relationship but rather an enforcement of standards mandated by the federal government with regard to which Company has no authority. Thus, we conclude the LALJ's determination that Claimant was not free from Company's control and direction is contrary to the substantial evidence.

## 2. Usual Course of Business

The second factor required to establish that an individual is not an employee is a demonstration that the service performed by the individual is performed outside the putative employer's usual course of business. *See* Ind. Code § 22-4-8-1(b)(2). Thus, here, Company was required to establish that the drive-away services provided by Claimant were outside of Company's usual course of business.

With regard to the second factor, the LALJ concluded:

The employer is a provider of one-way transportation of commodities. The employer chooses to use independent contractors to provide the deliver[y] service of the commodities. The independent contractors provide those services to the clients on behalf of the employer. The employer could not perform the work without the independent contractors such as the claimant. The claimant's work was within the usual course of the employer's business.

Appellant's App. Vol. 2, p. 11.

[28]  In support of the LALJ's conclusion that Company is a provider of one-way transportation of commodities, IDWD notes in its brief that Company's contract with Claimant states in the introductory recital paragraphs that Company is a licensed company authorized to engage in the transportation of motor vehicles. *See* Ex. Vol. 4, p. 14. However, Miller specifically testified to the meaning of this recital at the hearing. She explained that this provision means that Company is licensed/authorized to transport because it has a DOT number but that Company is not in the business of transporting. Tr. Vol. 2, p. 47. This is confirmed by the terms of the contract as well as by Miller's testimony that Company does not employ any individuals to provide drive-away services. Ex. Vol. 4, p. 14; Tr. Vol. 2, pp. 47-48. In fact, one-way transportation of commodities is the precise description of the services Claimant and the other contractor drivers provide to Company for its clients.

[29]  Miller further testified that Company's business is assisting its customers by pairing them with contractor drivers so that their customers can get their product from point A to point B. Tr. Vol. 2, p. 42. IDWD Investigator Wager

agreed that, based on her investigation, one way to describe Company's business is that of a middleman between manufacturers and drivers like Claimant. *Id.* at 19.

[30] Thus, the evidence established that Company's business is providing brokerage services between its customers and those individuals licensed and authorized to provide drive-away services. Stated another way, Company functions as an intermediary or middleman by employing people to pair its customers (manufacturers of RVs and other commercial motor vehicles) with individuals who are properly licensed to do the work (Claimant and other drivers). Accordingly, Company's business and Claimant's business, while complementary, are distinct. Therefore, the LALJ's determination that Claimant performed services that are within Company's usual course of business is contrary to the substantial evidence.

## 3. Independently Established Trade or Occupation

[31] The LALJ concluded that Company established the third factor that Claimant was customarily engaged in an independently established trade, occupation, profession, or business of transporting commodities. Neither Company nor the IDWD disputes this conclusion.

[32] Accordingly, as Company has established all three factors of the section 22-4-8-1(b) test, we conclude that Claimant performed drive-away services for Company as an independent contractor and not an employee. Here we pause to acknowledge that another panel of this Court recently reached the opposite

conclusion in a case similar to this. *Company v. Indiana Department of Workforce Development*, 86 N.E.3d 204 (Ind. Ct. App. 2017) also involved a company and contractor driver in the drive-away services industry. There, the Court affirmed the LALJ's determination that claimant was an employee of company because company had failed to establish factor 2 regarding the company's usual course of business. In short order, the panel concluded that the transport and delivery of large motor vehicles by licensed contractor drivers was not outside company's usual course of business because company was registered as a motor carrier with the DOT and competed with companies who offered the same drive-away services provided by employee drivers. Nevertheless, we conclude that, pursuant to the facts and circumstances presented in this case, Claimant was an independent contractor not an employee, and the LALJ's conclusion to the contrary is unreasonable.

[33] Decision reversed.

Najam, J., concurs.

May, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Andrew B. Murphy
Faegre Baker Daniels LLP
Minneapolis, Minnesota

Angela N. Johnson
Faegre Baker Daniels LLP
South Bend, Indiana

Paul D. Borghesani
Law Office of Paul D. Borghesani
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# I N T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Q. D.-A., Inc.,<br>*Appellant,*<br><br>v.<br><br>Indiana Department of<br>Workforce Development,<br>*Appellee.* | Court of Appeals Case No.<br>93A02-1703-EX-556 |

**May, Judge, dissenting.**

[34]   Because I would affirm the LALJ's conclusion that Claimant was an employee of Company under Indiana Code section 22-4-8-1, I must respectfully dissent.

[35]  As the majority notes, Indiana Code section 22-4-8-1 requires we consider every paid worker an employee unless an employer can demonstrate three factors. The second of these factors is that the Claimant's "service is performed outside the usual course of the business for which the service is performed." Ind. Code § 22-4-8-1(b)(2). With regard to that factor, the LALJ concluded:

> [T]he employer failed to establish that the claimant was performing work that was outside of the usual course of the employer's business. The employer is a provider of one-way transportation of commodities. The employer chooses to use independent contractors to provide the deliver[y] service of the commodities. The independent contractors provide those services to the clients on behalf of the employer. The employer could not perform the work without the independent contractors such as the claimant. The claimant's work was within the usual course of the employer's business.

(Appellant's App. Vol. 2 at 11.)

[36]  In support of those ultimate facts and conclusions, the LALJ entered the following findings of fact:

> The employer is a registered motor carrier with the Department of Transportation (DOT). The employer's DOT number is [******]. The employer provides one-way transportation of commodities. The commodities the employer transports are commercial vehicles including motor homes, buses, etc. This is referred to as drive away or tow away service. *Employer's Exhibit S.*
>
> The employer contracts with clients to provide delivery of the commodities. The employer uses independent contractors to perform the delivery service. If a commercial vehicle exceeds 26,000 pounds, it must be operated by someone who has a

> Commercial Driver's License (CDL). The employer does not
> employ any employees that have a CDL. The employer could
> not provide the delivery of the commodity without the
> independent contractors. The employer's contract with the
> claimant specifies that the employer is a company that engages in
> transportation of property, including motor vehicles.
> *Department's Exhibit 3.*

(*Id*. at 9) (italics in original).

[37] As the majority notes, another panel of this court recently affirmed an LALJ's decision, based on similar facts, that a driver for another drive-away company was an employee of that company. *See Company v. Indiana Department of Workforce Development*, 86 N.E.3d 204 (Ind. Ct. App. 2017). In analyzing whether that company proved its driver's service was outside that company's usual course of business, we stated:

> We have little trouble concluding that Company failed to do this.
> Indeed, the provision of transport and delivery of RVs is not just
> Company's usual course of business, it seems that it is its only course of
> business. Company is registered as a motor carrier with the United
> States DOT, its name is "* * * * * * * Transport," Department's Ex. 7A,
> and it would compete directly with companies who offered the same
> service provided by drivers who were employees. Company contends
> that its usual course of business is not the provision of transport services,
> but, rather, the provision of brokerage services. While perhaps
> technically true, we seriously doubt that customers with RVs to transport
> contact Company to act as a "middle man" between them and
> independent haulers; they call Company to have an RV moved from
> point A to point B and almost certainly do not care how Company
> accomplishes that task. From a common-sense standpoint, the
> Company's business is transport, and this is the precise service that
> Claimant provided to Company. The LALJ's conclusion that Claimant
> was, therefore, an employee for purposes of the Act is reasonable.

*Id*. at 208-9.

Because the facts herein are not appreciably different from the facts in that case, I would reach the same result and affirm the LALJ's conclusion that Claimant's service was within the Company's usual course of business, such that Claimant was an employee of Company. Accordingly, I respectfully dissent from the majority's reversal of the LALJ's determination.[1]

_____

[1] Were I writing a majority opinion affirming the LALJ's decision, I would also need to address the other issues raised by Company on appeal: (1) whether the Internal Revenue Service ("IRS") determination that Claimant was not an employee should be binding in this proceeding; (2) whether Indiana Code section 22-4-8-1 is preempted by federal law regarding regulation of motor carriers; and (3) whether the LALJ denied Company due process when the LALJ failed to use its subpoena power to require Claimant to appear and produce documents demonstrating he was not an employee of Company. Because my opinion herein cannot create binding precedent, I will address each of those issues only briefly.

I would hold the IRS determination of Claimant's status for federal unemployment tax purposes is not binding in Indiana unemployment tax proceedings because, while the two systems are intended to work cooperatively to create "a unitary plan for unemployment relief," *Buckstaff Bath House Co. v. McKinley*, 308 U.S. 358, 363 (1939), the two systems have different definitions of "employee." *Compare* Ind. Code § 22-4-8-1 *with* 26 U.S.C. § 3306(i) ("'[E]mployee' has the meaning assigned to such term by section 3121(d), except that paragraph (4) and subparagraphs (B) and (C) of paragraph (3) shall not apply." Section 3121(d) defines an employee based on the common law definition.). *See also Department of Labor, Licensing & Regulation v. Fox*, 697 A.2d 478, 485 (Md. 1997) (declining to apply federal test of employment instead of the three-factor test adopted by the Maryland legislature).

I would follow this Court's reasoning in *Company v. Indiana Dep't of Workforce Dev.*, 86 N.E.3d at 209-214, and hold Indiana Code section 22-4-8-1 is not preempted by the Federal Aviation Administration and Authorization Act. And, finally, I would hold any possible error that may have been created by the LALJ's refusal to enforce the subpoena for Claimant's documents was at most harmless because Company has not suggested how Claimant's documents could be relevant to a determination whether Claimant's services were "outside the usual course of" Company's business. *See* Ind. Appellate Rule 66(A) ("No error . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case is sufficiently minor so as not to affect the substantial rights of the parties.").