**BLOOMINGTON AREA ARTS COUNCIL, Appellant,**

v.

**DEPARTMENT OF WORKFORCE DEVELOPMENT, UNEMPLOYMENT INSURANCE APPEALS, Appellee.**

No. 93A02–0401–EX–8.

Court of Appeals of Indiana.

Jan. 31, 2005.

Geoffrey M. Grodner, Susan H. Worth, Mallor, Clendening, Grodner & Bohrer, Bloomington, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

The Bloomington Area Arts Council ("BAAC") appeals the decision of a Liability Administrative Law Judge ("ALJ") for the Department of Workforce Development, Unemployment Insurance Appeals ("Department") in which the ALJ found that the BAAC owed unemployment insurance tax contributions for instructors of various art classes offered to the public by the BAAC. The BAAC raises one issue, which we restate as whether the ALJ erred by determining that the instructors are employees of the BAAC within the meaning of Ind.Code § 22–4–8–1(a). We affirm.[1]

The relevant facts follow. The BAAC is a not-for-profit organization that provides access to the arts in Brown, Green, Monroe, Lawrence, and Owen Counties and supports public participation in the arts by providing "a broad range of programs and services." Transcript at 32. To fulfill its mission, the BAAC operates the John Waldron Arts Center in Bloomington where the BAAC exhibits local artists' work, provides performances to the community at no or little cost, operates a gift shop, and offers art education classes to adults and children.

In 2003, the Department initiated an audit of the BAAC and determined that the BAAC had misclassified the instructors of its art classes as independent contractors rather than employees. As a result of the misclassification, the Department found that the BAAC was liable for additional unemployment insurance tax contributions. The BAAC requested a review of the audit, and after a hearing, the ALJ entered the following decision:

**FINDINGS OF FACT:**

1. The [BAAC] is a not-for-profit organization supporting public participation in the arts in Brown, Green, Lawrence, Monroe, and Owen Counties of Indiana.

2. As part of its operation, the [BAAC] operates the John Waldron Arts Center in Bloomington, Indiana.

3. At the arts center, the [BAAC] arranges for various performances, has a gallery for exhibitions, has a gift shop, is involved in a grants program for the arts, provides services to artists, and also conducts an arts Education Program with courses including various classes for both youth, and adults.

---

1. We direct the BAAC's attention to Ind.App. Rule 46(A)(10) which requires an appellant's brief to "include any written opinion, memo- randum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

4. The Department's witness was assigned an audit of the [BAAC] for audit years 2001 and 2002.

5. The Department's witness determined that in audit year 2001, forty-one (41) individuals who performed services for the [BAAC] as teacher/instructors were employees of the [BAAC], and not independent contractors.

6. The Department's witness determined that during audit year 2002, seventy-five (75) individuals who performed services for the [BAAC] as teacher/instructors were employees of the [BAAC], and not independent contractors.

7. The Department's witness contacted an employer representative and discussed these individuals with the representative, reviewed the instructor's agreement between the [BAAC] and these individuals, and reviewed the [BAAC]'s course catalog, in making his decision as to the status of the individuals in question.

8. Education Program course offerings are established as follows: Local area artists contact the [BAAC] and present a potential subject matter for a course to the [BAAC]. The artists inform the [BAAC] of their schedules, and the [BAAC] then attempts to fit all the various artists and their courses into a curriculum fitting everyone's schedule. At that point, the [BAAC's] catalog is published. Approximately seventy (70%) to eighty (80%) percent of the courses published in the [BAAC's] catalog are actually held. If enough potential students (and the courses are offered to the public) register for a course, then the course is held. If an insufficient number of students register for a course, it is cancelled. If a course is cancelled, the teacher/instructor receives no remuneration. When individuals register for courses, they pay the course fee. If the course is cancelled, the fee is refunded. Instructors are paid on two occasions during a particular session, with half of the remuneration being paid during the second week of the session, and the other half being paid at the end of the session.

9. With regard to adult courses, the students in the courses buy their own materials for the courses.

10. With regard to youth courses, the instructor purchases the materials for the course. The cost of the materials is built into the cost of the course by the [BAAC].

11. The [BAAC] has an agreement which it utilizes as the contract between the [BAAC] and teacher/instructors. The [BAAC] attempts to get all of the individuals to execute such an agreement; however, only about seventy (70%) to seventy-five (75%) percent of the teacher/instructors return executed contracts to the [BAAC].

12. Under the terms of the contract, the instructor agrees to teach the particular class at the scheduled times. The instructor agrees to be compensated at a particular hourly rate per contract hour (the hours during the sessions). The contract also give the [BAAC] the authority to monitor classes; however, the [BAAC] testified that it does not normally monitor instructors, but does monitor the general operation of the facility during instruction periods to insure that the students

are treated properly. If an instructor cancels a class due to illness or other circumstances, the instructor is required to either find a qualified substitute, or cancel the class, and then inform the [BAAC]. The instructor is responsible for paying any substitutes which they use. Pursuant to the terms of the contract, the instructor agrees to adhere to the policies of the [BAAC] contained in the instructor's manual; however, the [BAAC] testified that it really does not use the manual.

13. The [BAAC] provides teachers/instructors who earn over six hundred dollars ($600) per year an IRS Form 1099, pursuant to IRS laws.

14. The [BAAC] has no restrictions on the teacher/instructors teaching elsewhere, or having their own studios or other businesses. Approximately fifty percent (50%) of the teacher/instructors are professional artists, and most of the other teacher/instructors are graduate students at Indiana University. The qualifications of the position are set forth in the course catalog, and include a four-year degree or its equivalence in the visual or performing arts or an education degree with art certification. No prior teaching experience is required, but it is preferred. No accreditation is required.

15. Without the [BAAC's] operation, the teacher/instructors would not have the opportunity to offer their classes.

16. The [BAAC] does an evaluation at the end of the session to essentially find out how the session went, as opposed to utilizing it for any type of discipline of the teacher/instructors.

17. The [BAAC] does not impose a penalty if the teacher/instructors are late for classes, although the contract does provide that the instructor will arrive in the class and will be ready to teach by the scheduled time, or make alternative arrangements in advance of the scheduled class.

18. The [BAAC] holds no faculty meetings.

19. The [BAAC] does not consider itself to be in the business of art education; however, it does consider its Education Program courses to be an intrical [sic] part of its mission, and it does consider itself to be in some competition with the Indiana University School of Continuing Education for the type of students which attend the [BAAC's] courses, and it does monitor the I.U. program to remain competitive with it.

20. The [BAAC] derives approximately twenty (20%) to thirty (30%) percent of its revenue from the tuition for these courses.

21. The [BAAC] does not charge the teacher/instructors for the space to hold classes, as the [BAAC] believes that this would not make sense in light of its mission.

22. The [BAAC] does have other individuals performing services for it, in addition to the teacher/instructors, and it considers these other individuals to be employees under state unemployment law.

23. The [BAAC] considers its operation to be a standard type procedure in the arts community.

**CONCLUSIONS OF LAW:**

\* \* \* \* \*

3. Although the [ALJ] finds that the [BAAC] exerts minimal direction or control over the teacher/instructors in question, it does possess the power and authority to do so if it so chooses.

4. The nature and the [BAAC's] business is supporting public participation in the arts in Brown, Green, Lawrence, Monroe, and Owen Counties in Indiana. A significant part of this operation is the providing of art educational classes for both adults and juniors. The workers in question are teacher/instructors of the courses in the Education Program. Therefore, the [ALJ] finds that the services provided by the teacher/instructors are an intrical [sic] part of the usual course of the [BAAC's] business.

5. According to the [BAAC], approximately fifty (50%) percent of the teacher/instructors are professional artists. The other individuals, for the most part, are graduate students at Indiana University. And, in fact, the [BAAC's] qualification requirements indicate that no prior teaching experience is necessary.

\* \* \* \* \*

**DECISION:** The issue involved herein is whether the individuals who perform a teaching/instructor service for art classes on behalf of the [BAAC] in its Education Program are employees of the [BAAC] or independent contractors. The Department has determined, based upon the application of the so-called "(A)(B)(C) test" set forth in IC 22–[4–]8–1(a), that the teacher/instructors are employees of the [BAAC] under Indiana law.

\* \* \* \* \*

[T]he [ALJ] finds that although the [BAAC] does not exert substantial direction or control over the teacher/instructors, it does possess the inherent power to direct and control them as necessary, under the provisions of the contractual agreements, and the structure of the [BAAC's] operation. Freedom from control of an individual includes freedom from the right of the [BAAC] to control the individual.... The teacher/instructors are not free from the [BAAC's] right to control them. The [ALJ] further finds that the nature of the [BAAC's] operation is the supporting of public participation in the arts in its geographic area, which includes the providing of art classes to interested individuals through its Education Program. Twenty (20%) to thirty (30%) percent of the [BAAC's] revenue is derived from the tuition paid by students for these classes. Therefore, the [ALJ] finds that the teaching of the classes in the Education Program segment of the [BAAC's] operation is an intrical [sic] part of the usual course of business of the [BAAC]. In addition, the [BAAC] has stated that with regard to its art courses operation, it considers itself to be in competition with the offering of similar courses by the Indiana University School of Continuing Education. And finally, the [ALJ] finds that the individuals in question perform the service of teacher/instructors only for the [BAAC's] art classes. These individuals are not customarily engaged in the teaching occupation; rather, approximately half of these individuals are artists by trade, with most of the remaining individuals being students. The [BAAC] even says that teaching experience is not required.

Therefore, the protest of the [BAAC] is hereby **DENIED.** The individuals in question are found to be employees of the [BAAC], and not independent contractors. The services which these individuals perform on behalf of the [BAAC] are found to constitute employment under Indiana unemployment law; therefore, the [BAAC] would be liable for the payment of contributions to the Department based upon the wages paid to the teacher/instructors resulting from the aforesaid services performed by these individuals on behalf of the [BAAC].

Appellant's Appendix at 2–6.

■ The issue on appeal is whether the ALJ erred by determining that the instructors are employees of the BAAC within the meaning of Ind.Code § 22–4–8–1(a). The Indiana Unemployment Compensation Act provides that "[a]ny decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." Ind.Code § 22–4–32–9(a) (1998). When the ALJ's decision is challenged as contrary to law, we are limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision" and the "sufficiency of the evidence to sustain the findings of facts." Ind.Code § 22–4–32–12 (1998). Under this standard, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the ALJ's finding is a reasonable one. *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1318 (Ind.1998), *reh'g denied.* Ultimate facts are conclusions or inferences from the basic facts. *Id.* at 1317.

■ The BAAC argues that the ALJ erred by determining that the instructors are employees of the BAAC rather than independent contractors. This issue is governed by Ind.Code § 22–4–8–1(a) (1998), which provides:

> Services performed by an individual for remuneration shall be deemed to be employment subject to this article irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract of service and in fact; (B) such service is performed outside the usual course of the business for which the service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed; or is a sales agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort.

Provisions (A), (B) and (C) of Ind.Code § 22–4–8–1 "must be considered conjunctively." *Norman A. Boerger Ins., Inc. v. Ind. Employment Sec. Bd.*, 158 Ind.App. 154, 159, 301 N.E.2d 797, 800 (1973). Further, under Ind.Code § 22–4–29–2 (Supp. 2003), assessments made against an "employing unit ... [are] considered prima facie correct." Consequently, the BAAC had the burden of demonstrating that the instructors were independent contractors rather than employees by showing that all three parts of the test were met. *See, e.g., Boerger*, 158 Ind.App. at 159–160, 301 N.E.2d at 800–801. The BAAC challenges the ALJ's findings of ultimate facts under the (A)(B)(C) test.

A. *Control*

■ To establish that an individual is not an employee, part (A) of the test requires the employer to demonstrate that

"such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract of service and in fact." I.C. § 22–4–8–1(a). Thus, the BAAC had to demonstrate that the instructors are free from the BAAC's control and direction. The ALJ found "[a]lthough ... the [BAAC] exerts minimal direction or control over the teacher/instructors in question, it does possess the power and authority to do so if it so chooses." Appellant's Appendix at 4. Further, the ALJ found that:

> [A]lthough the [BAAC] does not exert substantial direction or control over the teacher/instructors, it does possess the inherent power to direct and control them as necessary, under the provisions of the contractual agreements, and the structure of the [BAAC's] operation. Freedom from control of an individual includes freedom from the right of the [BAAC] to control the individual.... The teacher/instructors are not free from the [BAAC's] right to control them.

*Id.* at 5.

The BAAC argues the ALJ erred because it does not control the manner, method, or means by which the instructors teach the classes. Specifically, the BAAC argues that the instructors determine the class topic, time, and supplies necessary, the instructors must find substitute instructors if necessary, and the contract only gives the BAAC the power to confirm the instructor is performing in a satisfactory manner. The Department contends that the BAAC had the right to control the instructors and, thus, the BAAC cannot meet part (A) of the test.

The BAAC relies in part upon *Twin States Pub. Co., Inc. v. Indiana Unemployment Ins. Bd.,* 678 N.E.2d 110 (Ind.Ct. App.1997), *trans. denied.* There, the issue was whether persons who delivered shopping guides ("carriers") for a publisher were employees under Ind.Code § 22–4–8–1, and we noted:

> The statutory test as enacted by the legislature requires more than the mere power to have the [individuals] cease their performance of the service upon a showing that such service was not being performed in the manner in which it should be performed. There should be some control over the manner, method and means in which the services are performed.

*Id.* at 113–114. We concluded that the carriers were independent contractors, not employees. *Id.* at 114. The carriers were paid at a rate set by Twin States for each delivery made. *Id.* They had complete discretion over the manner, method and means of performing their work. *Id.* The only restrictions were that the carriers deliver the guides by 5:00 p.m. on Tuesdays, place the guides in a dry place, and perform their services in a workmanlike manner. *Id.* We held that "Twin States ha[d] the power to terminate the carriers upon a showing that the deliveries are not being performed in the manner in which they should be performed. However, ... the statutory test requires more." *Id.*

Here, the instructors propose certain art classes and inform the BAAC when they are available to teach the classes. The BAAC then determines which classes will be offered, establishes a schedule of classes, and publishes a catalog of the courses. If the course is held, adult students purchase their own supplies, and children or teen students are provided with the supplies by the instructor and the cost of supplies is included in the tuition. The BAAC asks the instructors to sign a contract, which includes a provision that the instructors agree "to accept the presence and participation of a class monitor" and to "adhere to the policies of the [John

Waldron Arts Center] contained in the [John Waldron Arts Center] Instructor's Manual." Exhibit 5. The contract also requires instructors to "arrive in the class and be ready to teach by the scheduled time" or make alternative arrangements. *Id.* It is the instructor's responsibility to find and pay a substitute if one is necessary.

The art classes are primarily held in the BAAC's building. The BAAC monitors the building and classes "to make sure that things are happening the way they are supposed to happen and that in a children's situation that there aren't unsafe things that are happening," but the BAAC does not monitor whether the instructors are teaching the correct curriculum in the class. Transcript at 20–21. Students fill out evaluations at the end of each course, and the BAAC uses the evaluation "to see how that instructor did" and to get input regarding possible future classes. *Id.* at 18.

As the ALJ noted, "freedom from control" includes "freedom from the right of the employer to control." Appellant's Appendix at 5; *see Boerger,* 158 Ind.App. 154 at 158, 301 N.E.2d at 800. The instructors do not have complete discretion over the manner, method and means of performing their work. Rather, the BAAC determines whether it will offer a proposed class, determines the schedule of the class, and has the ability and authority to monitor the instructors' performances. Under these circumstances, we cannot say that the ALJ's finding that the instructors are subject to the BAAC's control and direction is unreasonable.

B. *Usual Course of Business*

■ To establish that an individual is not an employee, part (B) of the test requires the employer to demonstrate that "such service is performed outside the usual course of the business for which the

service is performed." I.C. § 22–4–8–1(a). Therefore, the BAAC was required to demonstrate that the art classes were outside of the BAAC's usual course of business. The ALJ found:

> The nature and the [BAAC's] business is supporting public participation in the arts in Brown, Green, Lawrence, Monroe, and Owen Counties in Indiana. A significant part of this operation is the providing of art educational classes for both adults and juniors. The workers in question are teacher/instructors of the courses in the Education Program. Therefore, the [ALJ] finds that the services provided by the teacher/instructors are an intrical [sic] part of the usual course of the [BAAC's] business.

> \* \* \* \* \*

> The [ALJ] further finds that the nature of the [BAAC's] operation is the supporting of public participation in the arts in its geographic area, which includes the providing of art classes to interested individuals through its Education Program. Twenty (20%) to thirty (30%) percent of the [BAAC's] revenue is derived from the tuition paid by students for these classes. Therefore, the [ALJ] finds that the teaching of the classes in the Education Program segment of the [BAAC's] operation is an intrical [sic] part of the usual course of business of the [BAAC].

Appellant's Appendix at 5–6.

The BAAC argues that its usual course of business is not art education and that it does not hold itself out as an educational institution. The Department argues that the ALJ reasonably found that the art classes are an integral part of the BAAC's usual course of business. The evidence demonstrated that the BAAC is a not-for-profit organization that provides access to the arts in Brown, Green, Monroe, Law-

rence, and Owen Counties and supports public participation in the arts by providing "a broad range of programs and services." Transcript at 32. To fulfill its mission, the BAAC operates the John Waldron Arts Center in Bloomington where the BAAC exhibits local artists' work, provides performances to the community at no or little cost, operates a gift shop, and offers art education classes to adults and children. The BAAC is in competition with Indiana University's continuing education program and other organizations that provide art classes, and the BAAC receives twenty to thirty percent of its revenue from class tuitions.

The BAAC regularly offers the art classes as part of its mission to provide access to the arts in the community. The BAAC is in competition with other organizations that provide art classes and receives a substantial portion of its revenue from the art classes. Under these circumstances, we cannot say that the ALJ's finding that the art classes were an integral part of the BAAC's usual course of business is unreasonable.[2]

### C. *Independently Established Trade, Occupation, or Profession*

■ To establish that an individual is not an employee, part (C) of the test requires the employer to demonstrate that "such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed." I.C. § 22–4–8–1(a). Thus, the BAAC was required to demonstrate that the instructors are customarily engaged in an independently established trade, occupation, profession, or business of the same nature as teaching the art classes. The ALJ found:

> According to the [BAAC], approximately fifty (50%) percent of the teacher/instructors are professional artists. The other individuals, for the most part, are graduate students at Indiana University. And, in fact, the [BAAC's] qualification requirements indicate that no prior teaching experience is necessary.

---

**2.** In defining the phrase "usual course of business," the Dissent looks to cases involving workers' compensation and relies upon *State ex rel. Bettman v. Christen*, 128 Ohio St. 56, 190 N.E. 233, 237 (1934), for the proposition that the standard is whether the art classes are "required" in the BAAC's business. *See* Ind.Code § 22–3–6–1(b) (defining "employee" in the context of workers' compensation as "every person, including a minor, in the service of another, under any contract of hire or apprenticeship, written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation, or profession of the employer"). However, we find no Indiana cases applying this standard in workers' compensation cases. Rather, in *Scott v. Rhoads*, 114 Ind.App. 150, 155, 51 N.E.2d 89, 91 (1943), this court held:

> Appellant earnestly contends that because his principal occupation was farming, the employment of decedent was not in the usual course of his trade, business, etc. It will be noted *the provision of the Workmen'*

*s Compensation Act here under consideration does not provide that the employment must be in the usual course of the "principal" trade, business, etc., of the employer, but only that the employment must be in the course of the trade, business, etc., of such employer. We are of the opinion that an employer may be engaged in various separate and independent kinds of businesses or occupations, and that his employees in the usual course of each of said businesses or occupations are entitled to the benefits of the Workmen' s Compensation Act.* Any other construction of the provision of the statute herein involved would tend to nullify the humane purposes which the Workmen's Compensation Act seeks to accomplish.

(emphasis added). Under the *Scott* standard, the art classes may not be the BAAC's principal business, but the BAAC's mission is to provide access to the arts, which involves the implementation of various programs, and the art classes are provided as part of that mission.

\* \* \* \* \*

[T]he [ALJ] finds that the individuals in question perform the service of teacher/instructors only for the [BAAC's] art classes. These individuals are not customarily engaged in the teaching occupation; rather, approximately half of these individuals are artists by trade, with most of the remaining individuals being students. The [BAAC] even says that teaching experience is not required.

Appellant's Appendix at 5–6.

The BAAC argues that "it is irrelevant whether the individuals are actually performing similar services for others; rather, the key is that the individuals retain the independence to perform such services if desired." Appellant's Brief at 11. According to the BAAC, the instructors are free to teach art classes for other organizations. The BAAC relies in part upon *Twin States* for the proposition that it is irrelevant whether the instructors are actually teaching art classes elsewhere. In *Twin States,* we held:

> [A]s a matter of law the carriers are engaged in an independently established business. Specifically, they provide their own transportation, choose their own hours of work within a 24 hour time frame, choose their own replacements or sub-carriers if they are unable to perform, choose and pay their own helpers, and may perform the same services for publishers other than Twin States if they so desire.

*Twin States,* 678 N.E.2d at 114. Our decision in *Twin States* that the carriers were engaged in an independently established business was not based solely upon the ability of the carriers to perform the same services for other publishers. Rather, we looked at the totality of the circumstances to determine whether the carriers were engaged in an independently established trade, occupation, profession, or business

of the same nature as that involved in the service performed.

Here, half of the instructors in question are professional artists and the other half are graduate students. It is undisputed that the instructors are free to teach art classes for other organizations. However, it is also undisputed that very few of the instructors teach art classes elsewhere, and prior teaching experience is not required. The BAAC considers the instructors' proposals for classes, determines which classes will be offered, establishes a schedule of classes based upon each instructor's availability, publishes a catalog of the courses, provides a location for the classes in their John Waldron Arts Center, and monitors the classes. Under these circumstances, we cannot say that the ALJ's finding that the instructors are not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as teaching the art classes is unreasonable.

In summary, the BAAC failed to demonstrate that the instructors were not employees by failing to meet each element of the (A)(B)(C) test in Ind.Code § 22–4–8–1(a). The ALJ's finding that the instructors are employees rather than independent contractors is reasonable. *See, e.g., Furr v. Review Bd. of Indiana Employment Sec. Div.,* 482 N.E.2d 790, 793–794 (Ind.Ct.App.1985) (holding that the helper of an applicator of vinyl siding was an employee, not an independent contractor under Ind.Code § 22–4–8–1(a)).

For the foregoing reasons, we affirm the ALJ's decision that the instructors are employees of the BAAC.

Affirmed.

BAILEY, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

Application of the three part test in Ind.Code § 22–4–8–1 leads me to conclude the instructors of BAAC art classes are independent contractors and not employees of BAAC. I must therefore respectfully dissent.

## CONTROL AND DIRECTION

As support for its determination the instructors are subject to BAAC's control and direction the majority points to BAAC's authority to decide whether to offer a class, to decide when to schedule it, and to monitor the instructors' performances. This is insufficient to establish "control and direction." As the majority correctly notes, citing *Twin States*, 678 N.E.2d at 114, "control" requires more than the power to have the individual cease his or her performance—it requires control over the "manner, method and means" by which the services are performed.

In other words, the right to control includes the right to control the *details* by which the work is to be accomplished, and not just the result. *See, e.g., Lifetime Siding v. United States*, 359 F.2d 657, 660 (2d Cir.1966), *cert. denied* 385 U.S. 921, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966) (addressing the right to control as relevant to a determination of employer status for federal unemployment tax purposes); *see generally* Annotation, *Determination of Employer–Employee Relationship for Social Security Contribution and Unemployment Tax Purposes under 3121(d)(2) of Federal Insurance Contributions Act (26 U.S.C. 3121(d)(2)), of Federal Unemployment Tax Act (26 U.S.C. 3306(i)), and Implementing Regulations*, 37 ALR Fed. 95 § 6 (1978).

The "services" the instructors perform involve teaching, and neither the State nor the majority point to any evidence in the record to support the conclusion BAAC controls the "manner, method and means" of teaching, *i.e.*, the "details" of how the instructors teach the courses. In fact, the majority acknowledges "the BAAC does not monitor whether the instructors are teaching the correct curriculum in class." (Op. at 851.)

BAAC does not even "monitor," let alone control, the way the instructors perform their teaching services; I therefore would not hold that 1) BAAC's ability to control the time and place where a class meets and 2) the instructors' agreement to "accept the presence and participation of a class monitor," (Op. at 851), demonstrate sufficient control to suggest the instructors could be employees. *See Alumiwall Corp. v. Indiana Employment Sec. Bd.*, 130 Ind. App. 535, 541, 167 N.E.2d 60, 62 (1960) (a restriction that the workers perform their services in a "good and workmanlike manner" did not amount to retention of "direction and control" over such service so as to exclude it from that factor because "such restriction is inherent in all services performed by one for another").

## USUAL COURSE OF BUSINESS

The ALJ found part of BAAC's activities include operation of the John Waldron Arts Center, where it "arranges for various performances, has a gallery for exhibitions, has a gift shop, is involved in a grants program for the arts, provides services for artists, and also conducts an arts Education Program with courses including various classes for both youth, [sic] and adults." (Appellant's App. at 2.) The ALJ concluded the art classes were part of BAAC's "usual course of business" (*id.* at 6) because providing art classes was a "significant part" of BAAC's operation (*id.* at 5) and BAAC derived twenty to thirty percent of its revenue from tuition stu-

dents paid for the classes. By that standard,[3] the ALJ determined the classes were conducted in the usual course of BAAC's business.

I agree with BAAC that if every not-for-profit organization like BAAC that offered some sort of educational opportunity were considered a provider of education, many such educational opportunities would be eliminated because of the financial burden imposed by Ind.Code Title 22 Art. 4. Accordingly, I would determine whether this test is met by applying the standard this court has recognized as applicable to the determination whether one is an employee for other purposes, *e.g.*, worker's compensation.

In *Crabill v. Livengood,* 142 Ind.App. 624, 627, 231 N.E.2d 854, 856 (1967), we noted "certain fundamental guide lines which have been used throughout the years" for determining the nature of an employment relationship, one of which is "[t]he employment must be in the usual course, trade or business of the employer to constitute the status of employee." Thus, "[a] workman is a 'regular employee' if hired to do work in the usual course of trade, business or occupation of employer." *Id.* at 626, 231 N.E.2d at 855. We relied on *State ex rel. Bettman v. Christen,* 128 Ohio St. 56, 190 N.E. 233, 237 (1934) where the court stated:

> We think that such employment must be employment for work *of the kind required in the business of the employer,* and it must be in conformity to the established scheme or system of the business. Such scheme or system comprehends the nature of the enterprise,

its organization, its personnel requirements, and its methods of operation.

(Emphasis supplied.)

Nothing in the record suggests art classes are in any way "required" in BAACs business; nor would I hold, as the majority apparently does, that by virtue of offering art classes BAAC is engaged in "separate and independent kinds of businesses," one of which is an art school. *Scott,* 114 Ind.App. at 155, 51 N.E.2d at 91. I would accordingly find the art classes are not part of BAACs "usual course of business" despite the ALJs determination the classes are "an intrical [sic] part of the usual course" of its business.

## INDEPENDENTLY ESTABLISHED TRADE, OCCUPATION, OR PROFESSION

The majority finds the teachers are not customarily engaged in an independently established trade, occupation, profession, or business because "very few of the instructors teach art classes elsewhere, and prior teaching experience is not required." (Op. at 853.) I agree with BAAC that whether the instructors actually teach elsewhere is not the test for whether this element is satisfied.

In *Alumiwall,* 130 Ind.App. at 537, 167 N.E.2d at 60, we determined an "applicator," whose only function was to apply siding to the exterior of a building, was not an employee of Alumiwall, whose business included the furnishing of siding materials to be affixed to the exterior of various buildings. In deciding the applicators were engaged in an independent business, we noted they "*could perform* the same services for other than appellant *if they so*

---

**3.** The State's one-paragraph argument in support of this conclusion is devoid of citation to legal authority. Nor does the agency decision include any legal authority to the effect this is the correct standard, or is even a recognized standard, for determining whether these facts demonstrate the classes are conducted in the usual course of BAAC's business.

*desired."* *Id.* at 541, 167 N.E.2d at 62 (emphasis supplied).

We applied the same test and reached the same result in *Twin States,* where we found *"as a matter of law* the carriers are engaged in an independently established business" in part because they *"may perform* the same services for publishers other than Twin States *if they so desire."* 678 N.E.2d at 114 (emphasis supplied). Neither the State nor the majority offers authority to the effect more is required.[4]

I would accordingly reverse the ALJ's determination the art class instructors were employees of BAAC.

---

**4.** Rather, the majority reads *Twin States* to require an examination of the totality of the circumstances. As I have explained above, the totality of the circumstances leads me to conclude the art instructors are not employees of BAAC.