UTLX MANUFACTURING, INC.,
Appellant–Plaintiff,

v.

UNEMPLOYMENT INSURANCE AP-
PEALS OF the INDIANA DEPART-
MENT OF WORKFORCE DEVEL-
OPMENT, Appellee–Defendant.

No. 93A02–0810–EX–895.

Court of Appeals of Indiana.

May 20, 2009.

Andrew W. Gruber, Casey J. Eckert, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, UTLX Manufacturing, Inc. (UTLX), appeals the Liability Administrative Law Judge's (LALJ) decision on UTLX's Rate Protest, determining that Appellee–Defendant, the Unemployment Insurance Appeals of the Indiana Department of Workforce Development (Department of Workforce Development), had the authority to re-assess its unemployment contribution rate under Indiana Code section 22–4–29–2.

We affirm.

### ISSUE

UTLX raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the LALJ erred when he determined that UTLX was Union Tank Car Company's (Union Tank) successor employer, instead of a new employer, upon acquiring Union Tank's Indiana manufacturing unit for purposes of unemployment contributions.

### FACTS AND PROCEDURAL HISTORY

In 2003, Union Tank was engaged in the manufacturing, repair, and leasing of railroad tank cars. After considering various reorganization options to improve its business position and to practice lean manufacturing, Union Tank opted to move its manufacturing unit into a separate entity. As a result, in September of 2004, UTLX was incorporated in the State of Delaware as a new, separate entity responsible for manufacturing railroad tank cars, with Union Tank holding 100% of its stock. On January 1, 2005, Union Tank transferred its manufacturing assets to UTLX. Specifically, these assets included machinery, equipment, rail trackage, real estate and inventory valued at approximately $160,633,530 in addition to 1,110 employees. These assets accounted for less than six percent of Union Tank's total $2.76 billion in assets and less than fifty percent of Union Tank's

2,300 employees. "Virtually all" of Union Tank's 600 employees in its Indiana manufacturing facility were transferred to UTLX. (Appellant's App. p. 176).

On November 11, 2004, UTLX submitted to the Department of Workforce Development a Report to Determine Status, notifying the Department of its "[c]orporate change or reorganization." (Appellant's App. p. 240). At the same time, UTLX informed the Department of Workforce Development that it had acquired a portion of Union Tank's business by using the Department's Partial Sale form. On January 18, 2005, the Department of Workforce Development sent a notice to UTLX, stating that "[i]t has been determined that you became an employer subject to Indiana Code [§ ] 22–4–10–6 by acquiring a qualifying portion of [Union Tank's] business. Your contribution rate for the year of acquisition is 2.700%." (Appellant's App. p. 194). The 2.7% rate was assigned each year thereafter until 2008. Union Tank's contribution rate is 5.6%.

In March of 2008, the Department of Workforce Development installed its newly acquired State Unemployment Tax Act (SUTA) Dumping Detection System to closely track wage reports. Tracking UTLX's wage reports, the Department discovered an error in the assigned rating for UTLX. In May of 2008, the Department of Workforce Development contacted the Manager of Taxes for Union Tank and inquired about UTLX's acquisition of Union Tank's Indiana work force. On May 8, 2008, the Department of Workforce Development notified UTLX that it considered the transfer of assets from Union Tank to UTLX to be a total transfer. As such, its contribution rate for the years 2005 through 2008 should be 5.6%. On May 9, 2008, the Department sent UTLX a Notice and Demand for Payment for each quarter since the beginning of 2005 for a total retroactive amount of $584,475.43, interest of $121,351.15, and penalties of $58,447.56.

On May 16, 2008, UTLX sent a Rate Protest to the Department of Workforce Development. On June 23, 2008, the LALJ conducted a hearing. On September 10, 2008, after considering post-hearing briefs filed by both parties, the LALJ issued his decision, denying UTLX's Rate Protest. The LALJ concluded, in pertinent part, that

> The transfer, effective January 1, 2005, between the disposer and the employer, was a total transfer, not a partial transfer, and therefore constituted a full successorship under Indiana unemployment law. The statutes and rules relating to transfers/successorships, and employer contribution rates, under Indiana unemployment law apply to the above transfer from the disposer to the employer. And as stated hereinabove, the penalties imposed against the employer, set forth [i]n the Notice and Demands for Payment, are hereby waived.

(Appellant's App..p. 154).

UTLX now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

 UTLX contends that the LALJ erred by determining that the transfer of assets and employees from Union Tank to the newly established UTLX was a total transfer instead of a partial sale, thereby characterizing UTLX as a successor employer of Union Tank. The Indiana Unemployment Compensation Act provides that "[a]ny decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." I.C. § 22–4–32–9(a). When the LALJ's decision is challenged as contrary to law, we are limited to a two-part inquiry into the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence

to sustain the findings of fact. *Bloomington Area Arts Council v. Dep't of Workforce Dev., Unemployment Ins. Appeals,* 821 N.E.2d 843, 849 (Ind.Ct.App.2005). Under this standard, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the LALJ's finding is a reasonable one. *Id.* Ultimate facts are conclusions or inferences from the basic facts. *Id.*

■ Under the Indiana Employment and Training Services Act, Indiana Code sections 22–4–1–1 *et seq.,* unemployment insurance benefits are funded by a tax contribution imposed upon Indiana employers. *Indianapolis Concrete, Inc. v. Unemployment Ins. Appeals of the Ind. Dep't. of Workforce Dev.,* 900 N.E.2d 48, 50 (Ind.Ct.App.2009). A new employer's contribution rate will be 2.7%. I.C. § 22–4–11–2(b)(2). Each year, the Department of Workforce Development determines the contribution rate applicable to each employer, and the contribution is then credited to an "experience account" established for each employer by the Department. I.C §§ 22–4–11–2(a), (e). An employer's experience account is charged when a qualifying employee receives unemployment benefits based upon unemployment with that employer. *Ashlin Transp. Serv., Inc. v. Ind. Unemployment Ins. Bd.,* 637 N.E.2d 162, 171 (Ind.Ct.App.1994). The experience account contribution rate for an employer is determined, in part, by the balance in its experience account. *Id.* Therefore, when a company's employees file more unemployment claims, its contribution rate will also increase. *Id.*

In the event of a sale of a company, the Department of Workforce Development is responsible for determining the successorship status of an acquiring employer when either a total or partial acquisition occurs between employers. *Indianapolis Concrete, Inc.,* 900 N.E.2d at 50. An employer, who is determined to be a successor employer, assumes the resources and liabilities of the experience account of the predecessor employer with respect to that portion of the organization, trade or business acquired. *Id.* The successor employer's contribution rate is then adjusted based upon the new balance in its experience account. *Id.* If an acquiring employer is denied successor employer status, its experience account balance does not change after the acquisition and the employer's contribution rate is calculated based upon that unchanged balance. *Id.*

As recognized by the LALJ, the business transfer from Union Tank to UTLX is governed by Indiana Code section 22–4–7–2 for unemployment contribution purposes. Under Indiana Code section 22–4–7–2(a), an "employer" is any "employing unit" that "acquires the organization, trade, or business within this state of another" employer and any employing unit "which acquires substantially all the assets within this state of" an employer "if the acquisition of substantially all such assets of such trade or business results in or is used in the operation or continuance of an organization, trade or business." In addition, Indiana Code section 22–4–10–6(b)(2) provides that when "an employer acquires a distinct and segregable portion of the organization, trade, or business within this state of another employer, the successor employer shall assume the position of the predecessor employer with respect to the portion of the resources and liabilities of the predecessor's experience account as pertained to the distinct and segregable portion of the predecessor's organization, trade, or business acquired by the successor."

Mindful of both statutory provisions, UTLX now asserts that although it ac-

quired a distinct and segregable portion of Union Tank's assets, the transfer was only partial as Union Tank did not transfer "substantially all" of its assets. *See* I.C. § 22–4–7–2(a). In *Ashlin Transp. Serv. Inc.*, 637 N.E.2d at 172, we concluded that where (1) an employer acquires a clearly perceived group or unit of employees, or the entire workforce, of another employer, and (2) the acquiring employer assumes all of the employment responsibilities and provides the employees with continuous, stable employment, those employees constitute a "distinct and segregable portion of the organization, trade, or business of the predecessor employer[.]" The evidence reflects that in 2003 Union Tank restructured its business into three units: leasing, manufacturing, and repair. In September of 2004, UTLX became responsible for Union Tank's manufacturing unit. To that end, Union Tank transferred its manufacturing assets and employees to UTLX.

Thus, while we agree with UTLX that it became an employer to a distinct and segregable portion of Union Tank, we disagree that UTLX did not acquire substantially all of its predecessor's assets. As recognized by the LALJ, Indiana Code section 22–4–7–2 clearly provides that "any employing unit which acquires *substantially all the assets within this state*" is an employer for purposes of unemployment contributions. In *Astral Indus., Inc. v. Ind. Employment Sec. Bd.*, 419 N.E.2d 192, 197 (Ind.Ct.App.1981) (quoting *Harris v. Egan*, 135 Conn. 102, 60 A.2d 922, 925 (1948)), we noted that "the word 'substantially' ... does not indicate a definite, fixed amount of percentage but is an elastic term which must be construed according to the facts of the particular case." We also noted that "a prime question in determining whether substantially all of the assets [were acquired] ... is: Did the acquisition result in a substantial continuation of

the same or like business?" *Id.* Additionally, in *Indianapolis Concrete, Inc.*, 900 N.E.2d at 51–52, we acknowledged that in determining whether one employer has acquired substantially all of the assets of another, other courts have considered several factors, including acquisition of: (1) manufacturing equipment and machinery; (2) office equipment; (3) corporate name; (4) inventories; (5) covenants not to compete; (6) possession of premises; (7) good will; (8) work in progress; (9) patent rights; (10) licenses; (11) trademarks; (12) trade names; (13) technical data; (14) lists of customers; (15) sales correspondence; (16) books of accounts; and (17) employees transferred.

In the present case, the record reveals that both Union Tank and UTLX have a North American Industrial Classification System Code (NAICS) of 336510, which signifies railroad stock manufacturing. Tracey Moon (Moon), a supervisor at the Department of Workforce Development's Tax Rate Assurance Unit, testified that the Department's employer history for UTLX shows that in the fourth quarter of 2004 there are no wage records for UTLX, but UTLX had 679 wage records in the first quarter of 2005. At the same time, the Department's records for Union Tank show that 617 wage records were transferred from Union Tank to UTLX beginning in the first quarter of 2005. Moon also testified that UTLX and Union Tank share the same address, and have the same officers. Furthermore, Donald Keplinger, Manager of Taxes for Union Tank, stated at the hearing, that "virtually all" of Union Tank's employees employed in its Indiana manufacturing unit were transferred to UTLX. (Transcript p. 14). In addition to employees, UTLX also acquired Union Tank's machinery equipment, rail trackage, some buildings and inventory from Union Tank. In sum, based

on this evidence, we conclude that the LALJ properly decided that UTLX acquired substantially all of Union Tank's manufacturing assets within Indiana. As such, UTLX became Union Tank's successor employer for purposes of unemployment contributions.[1]

■ UTLX now asserts that even if its status needs to be re-evaluated as a successor employer because of a transfer of substantially all of Union Tank's manufacturing assets within Indiana instead of a partial transfer, the Department of Workforce Development did not have the authority to change its contribution rate under Indiana Code section 22-4-29-2, which provides, in pertinent part, that

> In addition to all other powers granted to the commissioner by this article, the commissioner or the commissioner's authorized representatives shall have the power to make assessments against any employing unit which fails to pay contributions, interest, skills 2016 training assessments under [I.C. § ] 22-4-10.5-3, or penalties.... Such assessments shall consist of contributions, skills 2016 training assessments under [I.C. § ] 22-4-10.5-3, and any interest.... Such assessment must be made not later than four (4) calendar years subsequent to the date that said contributions, ... would have become due, except that this limitation shall not apply to any contributions, ... which should have been paid with respect to any incorrect report filed with the department which report was known or should have been known to be incorrect by the employing unit.

In essence, UTLX contends that no new facts surfaced since the Department of Workforce Development's initial assessment in January 2005 that would support a

re-determination of the company's unemployment contributions. However, the information that Union Tank provided to the Department of Workforce Development was insufficient to establish that the transfer from Union Tank to UTLX was anything other than what Union Tank claimed it to be. Union Tank's report of transfer was dated November of 2004 and failed to mention wage records. The new information about the transfer of wage records only became available in 2008 when the Department of Workforce Development installed its new SUTA Dumping Detection System software. At that point in time, the Department of Workforce Development learned that the wage records of nearly all of Union Tank's Indiana employees were transferred to UTLX and that, instead of a partial transfer of assets, a full acquisition by UTLX had taken place. As a result, the Department of Workforce Development determined that UTLX's unemployment contribution should be set as a successor employer and should be raised from 2.7% to 5.6%. In effect, the Department concluded that UTLX had "failed to pay its contribution" and made an assessment of UTLX's proper rate pursuant to the statute. *See* I.C. § 22-4-29-2.

Furthermore, Indiana Code section 22-4-29-2 gives the Department of Workforce Development four calendar years to assess the contribution that has now become due. Here, the transfer occurred on January 1, 2005 and the Department sent its notice on May 8, 2008. Therefore, the Department clearly acted within this four year time period.

■ Lastly, UTLX argues that the LALJ erred when it determined the Department of Workforce Development can

---

**1.** Because we determine that a transfer of substantially all of Union Tank's Indiana manufacturing unit took place, we need not ad- dress UTLX's argument that the partial transfer rules apply to the acquisition of assets.

assess contributions and interest retroactively. The LALJ based its decision on I.C. § 22–4–29–1(a), which reads

> Contributions unpaid on the date on which they are due and payable, as prescribed by the Commissioner, shall bear interest at the rate of 1% per month or fraction thereof from and after such date until payment, plus accrued interest, is received by the Department. The Board may prescribe fair and reasonable regulations pursuant to which such interest shall not accrue.

UTLX claims that it relied on the Department's determination of 2.7% in unemployment contributions and appropriately paid all contributions at the assigned 2.7% tax rate by the Department for over three years. As such, it should not now be penalized by having to pay $121,351.15 in interest.

It should be noted that the Department calculated a 2.7% tax rate based on Union Tank's incorrect representation of the nature of the acquisition, and only after the new SUTA software became available at the Department for Workforce Development was the mistake discovered and corrected. Employers submit inaccurate transfer information at their own risk. The result is an adverse effect on other employers and a cost to the unemployment fund. The obvious method to guarantee that employers submit complete, detailed and accurate information to the Department is by way of the retroactive assignment of correct contribution rates within a four year time period and the employer's payment of the additional contributions owed, plus interest and penalties as appropriate. We find that the LALJ did not err in its application of Indiana Code section 22–4–29–1.

## CONCLUSION

Based on the foregoing, we hold that the LALJ properly determined that UTLX was Union Tank's successor employer, instead of a new employer, upon acquiring Union Tank's Indiana manufacturing unit for purposes of unemployment contributions.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.