Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**JAMES D. MASUR II**
Robert York & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 17 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

THE LAW OFFICE OF DEBORAH ) 
AGARD, )
                    )
      Appellant, )
                    )
        vs. )      No. 93A02-1107-EX-672
                    )
UNEMPLOYMENT INSURANCE )
APPEALS OF THE INDIANA )
DEPARTMENT OF WORKFORCE )
DEVELOPMENT, )
                    )
      Appellee. )

APPEAL FROM THE DEPARTMENT OF WORKFORCE DEVELOPMENT,
UNEMPLOYMENT INSURANCE APPEALS
Joanne T. Green, Liability Administrative Law Judge
Cause No. 11-02545

**April 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, J.**

The Law Office of Deborah Agard ("the Law Office") appeals the decision of a Liability Administrative Law Judge ("LALJ") for the Unemployment Insurance Appeals division of the Indiana Department of Workforce Development, ("the Department"), in which the LALJ found that the Law Office owed unemployment insurance tax contributions for Carlotta Wilson ("Wilson"), an individual the Law Office paid to perform cleaning services at its office and at Kids' Voice, a not-for-profit child advocacy center where Deborah Agard ("Agard"), the sole proprietor of the Law Office, serves on the board of directors. The Law Office raises one issue, which we restate as whether the LALJ's finding that Wilson was an employee of the Law Office for the purposes of the Indiana Unemployment Compensation Act was unreasonable. We affirm.

**Facts and Procedural History**

For the past five years, the Law Office has rented office space and maintained its place of business in a large office building. As part of the Law Office's lease, the landlord originally provided cleaning services. However, in 2008, after learning that thefts had occurred on another floor of the building, Agard informed the landlord that she no longer wished to use the landlord's cleaning service and would be hiring her own cleaning service. Thereafter, the Law Office engaged the services of Wilson to perform housekeeping services in the office. During 2008, the Law Office treated Wilson as an independent contractor for tax purposes and issued her an IRS Form 1099 rather than a W-2.

In 2009, after Agard learned that Wilson did not carry her own liability insurance,

2

the Law Office added Wilson to its payroll so that she could be covered by the Law Office's insurance policy while performing cleaning services there. Accordingly, in 2009, the Law Office paid unemployment insurance tax contributions for Wilson with respect to the work she performed at the Law Office, and Wilson was issued a W-2 for the wages she earned for those services. However, the Law Office also paid Wilson to perform cleaning services at Kids' Voice during 2009. The Law Office treated Wilson as an independent contractor with respect to the services she performed at Kid's Voice and issued her an IRS Form 1099 for the wages she earned for those services.

In 2010, the Department initiated an audit of the Law Office and determined that the Law Office had misclassified Wilson as an independent contractor rather than an employee with respect to the cleaning services she performed at the Law Office in 2008 and at Kids' Voice in 2009. As a result of the misclassification, the Department determined that the Law Office was liable for $188.45 in additional unemployment insurance tax contributions, plus interest and penalties. The Law Office filed a protest, and on June 9, 2011, a hearing was held before the LALJ. At the hearing, the Department's auditor testified that when she reviewed the Law Office's payroll records and quarterly reports, she determined that Wilson had received a 1099 in 2008, and in 2009, she received both a W-2 and a 1099.

The auditor testified further that she contacted Wilson in an attempt to determine whether Wilson had worked as an independent contractor with respect to her 1099 earnings. The auditor testified that Wilson provided her with a business card, but that the

card was "unprofessional" and contained incomplete address information. Tr. pp. 12-13. The auditor testified further that during a telephone conversation with Wilson, Wilson told her that she only performed cleaning services for Agard. Ten minutes later, Wilson called the auditor back and stated that she also performed cleaning services for a local musicians' union and another individual, Patty Pitman ("Pitman"). Because the auditor discovered that Wilson had received a W-2 from the musicians' union, the auditor determined that Wilson worked for the musician's union as an employee, not an independent contractor. The auditor attempted to contact Pitman, but Wilson was unable to provide Pitman's address, and the phone number Wilson provided was disconnected. Based on all of this information, the auditor determined that Wilson was not truly engaged in an independently established cleaning business.

At the conclusion of the hearing, the LALJ took the matter under advisement. Then, on June 30, 2011, the LALJ issued an order denying the Law Office's protest, which included the following relevant findings and conclusions:

2. The [LALJ] concludes that the employer exerted supervisory direction and control over Carlotta Wilson. The employer determined Ms. Wilson would work at Kids' [V]oices [sic], the hours she would work and paid Ms. Wilson for her services at Kids' Voices [sic].

3. Although the employer is not engaged in the cleaning business, having a clean and presentable office is integral to having a professional office environment for an attorney's practice.

4. The [LALJ] further concludes that the employer failed to establish that [Wilson] was engaged in an independently established trade, occupation, profession or business as a cleaning person. [Wilson's] business card was unsophisticated and incomplete. Ms. Wilson provided no [S]chedule C to establish she had an independent cleaning business. She could not provide the correct name and address of any other customer. She had W2s from the

4

Musicians' Union demonstrating she was an employee in the past while performing similar services.

Appellant's App. p. 6. The Law Office now appeals.

## Standard of Review

The Indiana Unemployment Compensation Act provides that "[a]ny decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." Ind. Code § 22-4-32-9(a) (2005). When the LALJ's decision is challenged as contrary to law, our review is limited to a two-part inquiry into the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact. UTLX Mfg., Inc. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev., 906 N.E.2d 889, 891-92 (Ind. Ct. App. 2009). Under this standard, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the LALJ's finding is reasonable. Bloomington Area Arts Council v. Dep't of Workforce Dev., Unemployment Insurance Appeals, 821 N.E.2d 843, 849 (Ind. Ct. App. 2005). An ultimate fact is a conclusion or inference from a basic fact. Id. In reviewing the decision of an administrative agency, this court does not reweigh the evidence or judge the credibility of witnesses. Jug's Catering, Inc. v. Ind. Dep't of Workforce Dev., Unemployment Ins. Bd., 714 N.E.2d 207, 209 (Ind. Ct. App. 1999), trans. denied.

## Discussion and Decision

The Law Office contends that the LALJ erred in concluding that Wilson was an employee of the Law Office within the meaning of Indiana Code section 22-4-8-1(b)

(2005) with respect to the cleaning services she performed at the Law Office during 2008 and at Kids' Voice during 2009. The governing statute provides:

> Services performed by an individual for remuneration shall be deemed to be employment subject to this article irrespective of whether the common-law relationship of master and servant exists, unless and until all the following conditions are shown to the satisfaction of the department:
>
> (1) The individual has been and will continue to be free from control and direction in connection with the performance of such service, both under the individual's contract of service and in fact.
>
> (2) The service is performed outside the usual course of the business for which the service is performed.
>
> (3) The individual:
>     (A) is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed; or
>     (B) is a sales agent who receives remuneration solely upon a commission basis and who is the master of the individual's own time and effort.

Ind. Code § 22-4-8-1(b). Whether a person is an employee or an independent contractor is an ultimate fact to be determined from the evidence, and we will therefore affirm the LALJ's finding in that regard if it is reasonable. See News Pub. Co. v. Verweire, 113 Ind. App. 451, 451, 49 N.E.2d 161, 162 (1943). Assessments made against an employing unit are considered prima facie correct. Ind. Code § 22-4-29-2 (2005); Bloomington Area Arts Council, 821 N.E.2d at 849. Consequently, the Law Office had the burden of demonstrating that Wilson was an independent contractor rather than an employee by showing that all three parts of the statutory test were met. See Bloomington Area Arts Council, 821 N.E.2d at 849.

Here, the LALJ determined that the Law Office had not met its burden of showing

6

that any one of the three parts of the statutory test had been met. But because we can resolve this appeal by considering only the third prong of the statute, we limit our analysis to whether Wilson was "customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed[.]" I.C. § 22-4-8-1(b)(3)(A).

In Alumiwall Corp. v. Indiana Employment Security Board, this court addressed the question of whether siding "applicators," who were paid by a seller of roofing and siding materials to install siding for customers, were employees for the purposes of the Unemployment Compensation Act. 130 Ind. App. 535, 537-38, 167 N.E.2d 60, 60-61 (1960). The applicators received work assignments as they saw fit by contacting Alumiwall, and they were paid according to the amount of siding they installed. Id. at 537, 167 N.E.2d at 60. The applicators furnished their own trucks and equipment, and they hired whatever help they felt necessary to complete the particular job. Id., 167 N.E.2d at 60. Alumiwall had no control over the number of helpers, if any, the applicators hired, the amount the helpers were paid, or whether helpers were retained or fired. Id., 167 N.E.2d at 60. Nor did Alumiwall exercise any control with respect to the applicators' working hours, the number of jobs they took, or whether they took any jobs at all; if, upon completion of a job, an applicator did not desire to take any more work from Alumiwall, the applicator simply did not contact Alumiwall to request any more work. Id. at 61, 167 N.E.2d at 538.

This court concluded that the applicators were not employees, in part because the

7

applicators were engaged in an independently established trade, occupation, profession, or business. Id. at 540, 167 N.E.2d at 62. In support of this conclusion, the court reasoned that the applicators "supplied their own tools and equipment, hired and fired their own helpers, were free to work or not work as they saw fit, and could perform the same services for other than appellant if they so desired." Id.; see also Twin States Pub. Co. v. Ind. Unemployment Ins. Bd., 678 N.E.2d 110, (Ind. Ct. App. 1997) (concluding that individuals who delivered shopping guides for Twin States were engaged in an independently established business because "they provide[d] their own transportation, [chose] their own hours of work within a 24 hour time frame, [chose] their own replacements or sub-carriers if they [were] unable to perform, [chose] and [paid] their own helpers, and [could have] perform[ed] the same services for publishers other than Twin States if they so desire[d]."), trans. denied.

In Bloomington Area Arts Council, this court reached the opposite conclusion. In that case, the court addressed whether the Council, a not-for-profit organization supporting public participation in the arts, had misclassified the instructors of art education classes the Council offered to the public as independent contractors rather than employees. 821 N.E.2d at 845. In reaching the conclusion that the instructors were not engaged in an independently established business, the court acknowledged that the instructors were free to perform the same or similar services for entities other than the Council, but concluded that this consideration was not dispositive. Id. at 853. The court reasoned that the conclusion reached in Twin States was based on the totality of the

circumstances, and not solely on the fact that the carriers were free to perform the same services for others. Id. The court went on to reason that although the instructors were free to teach art classes elsewhere, very few of them did so, and prior teaching experience was not required. Id. The court also noted that the Council considered the instructors' proposals for classes, determined which classes to offer, established a schedule of classes based upon the instructors' availability, published a catalog of courses, and provided the location for and monitored the classes. Id. Based on the totality of these circumstances, the court concluded that the LALJ's finding that the instructors were not customarily engaged in an independently established trade, occupation, profession or business of the same nature as teaching the art classes was not unreasonable. Id.

In light of this precedent, and considering the totality of the facts and circumstances of the case before us, the LALJ's conclusion that Wilson was not engaged in an independent cleaning business was not unreasonable. Although the Law Office emphasizes the apparent fact that Wilson was free to perform cleaning services for others, that fact standing alone is not dispositive. Indeed, absent an agreement to the contrary, employees are generally free to perform similar services for other employers. Moreover, the facts most favorable to the LALJ's conclusion do not establish that Wilson in fact performed such services for anyone else *as an independent contractor*. In her first conversation with the auditor, Wilson stated that she only provided cleaning services for Agard. Ten minutes later, Wilson called the auditor back and stated that she also provided housekeeping services for the musicians' union and Pitman. The auditor

9

confirmed that Wilson performed cleaning services for the musicians' union, but this does not support a conclusion that Wilson was engaged in an independently established business because she performed cleaning services for the musicians' union as an employee, not an independent contractor.[1] And the auditor was unable to verify that Wilson provided cleaning services to Pitman because Wilson could not provide Pitman's address and the telephone number Wilson provided was disconnected.[2]

Additionally, the business card that Wilson gave to the auditor was incomplete and unprofessional. Specifically, it appears that the card was created using a template, but Wilson did not complete the form. For example, the spaces for the second and third lines of the business address were never changed, so they read "Address Line 2" and "Address Line 3." See Ex. Vol. p. 16, Division Ex. 8. Likewise, the spaces for the business fax number and e-mail address were never changed or deleted, so they read "Fax #" and "Email." Id. Because many legitimate small businesses use templates to create their own business cards, the fact that the card was homemade would not necessarily support a conclusion that Wilson was not engaged in an independent cleaning business. But the card's incomplete and sloppy appearance, when combined with Wilson's equivocal statements concerning the cleaning services she claimed to have provided to others and

---

[1] The Law Office directs our attention to Agard's testimony that she believed that Wilson provided cleaning services for several other people, including other tenants in the office building. But in light of Wilson's statements to the auditor, the Law Office's arguments in this regard are simply requests to reweigh the evidence, judge the credibility of witnesses, and consider evidence unfavorable to the LALJ's decision, which we will not do on appeal.

[2] The Law Office complains that the auditor's investigation was not sufficiently thorough. This argument overlooks the fact that services performed for remuneration are presumed to be employment, and the purported employer bears the burden of establishing that the purported employee is an independent contractor. See Bloomington Area Arts Council, 821 N.E.2d at 849.

10

her inability to provide contact information for Pitman, as well as her failure to provide tax documents establishing that she had received payments from others for her cleaning services, could support a reasonable inference that Wilson had not actually been engaged in an independent cleaning business, but was attempting to make it appear otherwise.

The facts of this case are also distinguishable from Alumiwall and Twin States because there is no evidence to suggest that Wilson was free to hire helpers or to send a substitute to perform cleaning services when she was unavailable to work. Nor was there any testimony or evidence suggesting that Wilson was free to work or not work as she saw fit. Although Wilson provided her own cleaning supplies and was apparently free to perform cleaning services for others, when considering the totality of the circumstances, we cannot conclude the LALJ's finding that Wilson was not engaged in an independent cleaning business was unreasonable.[3] Consequently, the LALJ's conclusion that the Law Office failed to satisfy its burden of establishing that Wilson was not an employee with respect to the cleaning services she performed at the Law Office in 2008 and at Kids' Voice in 2009 was not unreasonable.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

---

[3] The Law Office raises a number of public policy-based arguments for the first time in its reply brief. It is well settled that a party may not raise an argument for the first time in a reply brief. Naville v. Naville, 818 N.E.2d 552, 553 n.1 (Ind. Ct. App. 2004). Because the Law Office failed to assert its public policy arguments in its principal appellate brief, they are waived.