# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**THOMAS DEER**
**TODD KAISER**
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Apr 18 2013, 8:52 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TPUSA, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1207-EX-605 |
| | ) | |
| UNEMPLOYMENT INSURANCE APPEALS | ) | |
| OF THE INDIANA DEPARTMENT OF | ) | |
| WORKFORCE DEVELOPMENT, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEPARTMENT OF WORKFORCE DEVELOPMENT
UNEMPLOYMENT INSURANCE APPEALS
The Honorable Joanne T. Green, Liability Administrative Law Judge
Cause No. 12-04717

April 18, 2013

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

TPUSA Inc. appeals the liability administrative law judge's ("LALJ") determination that TPUSA owes $125,666.33 to the Indiana Department of Workforce Development ("Department").

We reverse and remand.

## ISSUE

TPUSA presents five issues, which we consolidate into a single dispositive issue: whether the LALJ erred by determining that TPUSA owes $125,666.33 in unemployment insurance contributions, interest, and penalties for 2010 when TPUSA had no employees in Indiana in 2010 and paid no wages in Indiana in 2010.

## FACTS AND PROCEDURAL HISTORY

TPUSA owns and manages call centers around the country. It is owned by Teleperformance Group Inc., a Florida holding company. In 2009, TPUSA operated a call center in Fishers, Indiana. After September 30, 2009, TPUSA no longer had employees in Indiana, and the Fishers facility officially closed on October 31, 2009. TPUSA made contributions to the Department for unemployment insurance for its employees until the facility closed. TPUSA submitted its 2009 fourth quarter wage report showing that it had no employees and had paid no wages. Having no operations or employees in the State of Indiana in 2010, TPUSA did not file any quarterly payroll reports with the Department for that year.

2

The Department sent a notice ("Penalty Letter") to TPUSA on March 21, 2011, informing TPUSA that it had failed to submit payroll reports for 2010 and instructing that it file all reports or have its account subject to estimation of its overdue unemployment insurance contributions. Receiving no response to the Penalty Letter, the Department sent another notice ("Notice and Demand Letter") to TPUSA on April 26, 2011, notifying TPUSA of the estimation amount that had been placed on its account. The Department's estimation of TPUSA's overdue unemployment insurance contributions, plus interest and penalties, totaled $125,666.33. TPUSA protested this assessment on November 18, 2011.

On June 11, 2012, a liability hearing was held before the LALJ. The first issue upon which the parties presented evidence was the timeliness of TPUSA's protest. On this issue, the LALJ found:

> With regard to an issue of the timeliness of the filing of a protest, the burden of proof lies with the Department. The Liability Administrative Law Judge finds that the Department has failed to conclusively establish, by introduction of a copy of the four Notice and Demands, the date on the face of the Notice and Demands, or that appeal rights were communicated to the employer. Therefore, Liability Administrative Law Judge finds the employer's protest to be timely under the circumstances.

Appellant's App. p. 8. Although the LALJ determined that TPUSA's protest was timely filed, it denied the protest and found the Department's estimation of contributions and assessment of interest and penalties to be proper. It is from this decision that TPUSA appeals.

## DISCUSSION AND DECISION

3

TPUSA contends that the LALJ erred in its determination that, although TPUSA had no Indiana employees and paid no Indiana wages for 2010, it owes unemployment insurance contributions for 2010, plus interest and penalties totaling $125,666.33. The Indiana Unemployment Compensation Act provides that any decision of the LALJ shall be conclusive and binding as to all questions of fact. *See* Ind. Code § 22-4-32-9(a) (1995). When the LALJ's decision is challenged as contrary to law, we are limited to a two-part inquiry into the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact. *UTLX Mfg., Inc. v. Unemployment Ins. Appeals of Ind. Dep't. of Workforce Dev.*, 906 N.E.2d 889, 891-92 (Ind. Ct. App. 2009); *see* Ind. Code § 22-4-32-12 (1990). Pursuant to this standard, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the LALJ's finding is a reasonable one. *UTLX Mfg.*, 906 N.E.2d at 892. Ultimate facts are conclusions or inferences from the basic facts. *Id.*

Indiana's unemployment compensation system is in place to protect against economic insecurity due to unemployment. Ind. Code § 22-4-1-1 (1995). This system is administered by the Department, *see* Ind. Code § 22-4-18-1(b)(1) (2007), and is funded by imposing a tax, referred to as a "contribution," on employers of this state. Ind. Code §§ 22-4-10-1 (2009), 22-4-2-4 (1987). Contributions are determined based upon a percentage of wages paid in a calendar year. Ind. Code §§ 22-4-10-3 (2009), -1.

Every employer that is subject to Indiana Code article 22-4 must file quarterly contribution reports and wage reports. 646 Ind. Admin. Code 3-1-1 (1994). Where the status of an employer is changed by cessation, the employer shall immediately notify the Department and immediately file the necessary contribution and wage reports. 646 Ind. Admin. Code 3-1-6(a) (1994). Reports dealing with the quarter in which the employer's change of status occurred shall be marked "final report." *Id.*

In the present case, TPUSA did not mark its fourth quarter 2009 report as "final report," and it did not file any reports with the Department in 2010. It also did not notify the Department that it had ceased operations in Indiana. Thus, the Department, unaware that TPUSA had ceased doing business and paying wages in Indiana, expected to continue to receive quarterly contribution and wage reports from TPUSA. Therefore, when the Department did not receive the required reports, it followed the course of action as outlined in the applicable statutes.

First, Indiana Code section 22-4-19-9 (2001) mandates that a written notice (Penalty Letter) be mailed to the employer if it fails to submit any payroll report required under the unemployment compensation system statutes. The Penalty Letter informs the employer that it must file all reports within ten days or have its account subject to estimation. If, after ten days, the employer fails to file a report, an estimation is made of the amount of the contribution due from the employer, and this amount is considered prima facie correct. *Id.*

5

Once an estimation is placed on an employer's account, the Department must notify the employer via a Notice and Demand Letter. Ind. Code § 22-4-11-4(a) (2002). The employer then has fifteen days in which to file a report in order to establish the correct amount it owes to the Department. *Id.* If the employer does not file a report within this time period, the Department uses its estimation amount, and this amount generally may not be reduced even upon subsequently ascertained information. *Id.* Further, the estimation amount is considered prima facie correct. *Id.* In addition to the estimation amount, Indiana Code section 22-4-29-1 (1995) permits the calculation of penalties and interest upon delinquent contributions. If certain criteria are met, however, subsection (b) of Indiana Code section 22-4-11-4 does allow for a reduction of the estimated amount of contribution based upon subsequently ascertained information. These criteria are: (1) the employer makes an affirmative showing of "reasonable cause" for the failure to timely file any payroll report, and (2) the employer submits accurate and reliable payroll reports. *Id.*

Here, the Department sent a Penalty Letter to TPUSA on March 21, 2011. The Department nevertheless received no reports from TPUSA, so the Department placed an estimation on TPUSA's account. Subsequently, on April 26, 2011, the Department sent Notice and Demand Letters to TPUSA, to which TPUSA did not respond. The Department then used its estimation of contributions owed, plus interest and penalties, to arrive at $125,666.33.

At the hearing, TPUSA introduced Exhibit 4, which shows that for the fourth quarter of 2009, TPUSA paid no wages in Indiana and had no employees in the state. Appellant's App. pp. 85, 86. In addition, Christina Miller, Reporting Manager at TPUSA, testified at the hearing on behalf of her employer. She stated that in 2009, TPUSA's finance and payroll department was split into two departments with one department located on the East Coast and one department located on the West Coast. Miller testified that the East Coast operation was handling payroll notifications at the time, and by the time the two departments were consolidated into the West Coast operation, the Indiana site had been officially closed, and she had no reason to believe that everything had not been taken care of. Miller was not aware that TPUSA's unemployment insurance tax account in Indiana was still active until September 2011 when she received a notice from the Department. She further testified that until she received this notice, she had not been made aware of any delinquency or any Notice and Demand Letters. After receiving the notice, TPUSA protested the $125,666.33 assessment.

When questioned about the certified mail return receipts from the Notice and Demand Letters mailed by the Department on April 26, 2011, Miller testified that she had since researched the signature on the receipts and had discovered that they were signed for by a receptionist in Columbus, Indiana on April 29, 2011. However, Miller never received any letters. Further investigation showed the letters were sent to the human resources department in Columbus which sent them on to another department, but no one

could verify where the letters were sent or to whom, and no one had any record or copies of the letters.

Jennifer Chappel, Director of Unemployment Insurance Tax Administration with the Department, testified that reasonable cause, as provided for in Indiana Code section 22-4-11-4(b), is defined as acts of God, nature, war or terrorism, death or incapacitation of an owner/preparer, or theft or embezzlement by a fiduciary of the company.

In finding for the Department, the LALJ determined:

> Ind. Code § 22-4-11-4 (2011) [sic] requires an estimate of contributions if the employer fails to file a quarterly report. The estimate is considered prima facie correct in the absence of an affirmative showing of "reasonable cause" for failure to file a timely payroll report and provide accurate records. The Department interprets "reasonable cause" as extreme circumstances. Merely failing to notify the Department that the employer is out of business does not fall within the Department's interpretation. Although the Department's interpretation appears harsh concerning employers who no longer do business in the state and have to pay contributions, interest and penalties when there was no payroll, the statute requires the Department to take certain actions when an employer stops paying contributions without explanation. The Department has the authority to make estimations and charge interest and penalt[ies] and there is no requirement that the Department take a "soft" approach in defining "reasonable cause."

Appellant's App. pp. 8-9.

In the present case, it is uncontested that TPUSA timely filed accurate reports with the Department showing that it had paid no wages and that it had no employees for the fourth quarter of 2009. In addition, the Department does not contest that TPUSA's Fishers facility ceased operations in 2009 and had no employees and paid no wages in 2010. It is undisputed then, given these facts, that although TPUSA failed to mark its

8

fourth quarter 2009 reports "final report," it had no continuing obligation to pay further unemployment insurance contributions to the Department.

Therefore, we hold that where an employer has ceased business operations in Indiana, no longer pays wages or has any employees in the state, and files accurate reports with the Department indicating such, this may be considered "reasonable cause," as required by Indiana Code section 22-4-11-4(b), so as to allow for an adjustment (i.e., reduction) in the amount of the estimated contribution.

Based upon the facts of this case, we find that the evidence shows that TPUSA demonstrated reasonable cause and that the Department erroneously assessed past due unemployment insurance contributions, together with interest and penalties. To hold otherwise under these facts would produce an absurdity whereby a business would be required to pay more than $125,000.00 on an account upon which it owed nothing. Moreover, we are mindful of the possible far-reaching effect of such a holding in thwarting businesses from opening new or maintaining existing operations within our state.

More appropriate action in these circumstances is provided for in Indiana Code section 22-4-19-10 (1995), which provides that an employer that negligently or willfully fails to submit any report required for proper administration of Indiana Code article 22-4 shall be assessed a penalty of $25.00. As we previously stated, because TPUSA failed to mark "final report" on its fourth quarter 2009 reports, the Department was unaware of its cessation of business in Indiana. Thus, quarterly reports were required to be filed with

9

the Department by TPUSA for each quarter of 2010 until the Department was notified of TPUSA's cessation of business in the state. *See* 646 Ind. Admin. Code 3-1-1, -6. Two reports are required each quarter. *See* 646 Ind. Admin. Code 3-1-1. A calculation of TPUSA's fines for failing to file quarterly reports in 2010 is $200. Pursuant to our finding of reasonable cause under Indiana Code section 22-4-11-4(b), the Department's assessment against TPUSA for overdue estimated contributions, interest, and penalties in the amount of $125,666.33 is reduced to $200 in fines.

## CONCLUSION

For the reasons stated, we conclude that the LALJ erred by determining that TPUSA owes $125,666.33 in unemployment insurance contributions, interest, and penalties for 2010 when TPUSA had no employees in Indiana in 2010 and paid no wages in Indiana in 2010.

Reversed and remanded.

BAKER, J., and PYLE, J., concur.